**In re PHILADELPHIA ATHLETIC CLUB, INC., Debtor.**

**Bankruptcy No. 80–02028G.**

United States Bankruptcy Court, E. D. Pennsylvania.

Oct. 14, 1981.

Pace Reich, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for debtor, Philadelphia Athletic Club, Inc.

Melvin Lashner, Adelman & Lavine, Philadelphia, Pa., for Leon W. Silverman and Elias H. Stein, objectors.

Arthur E. Dennis, Philadelphia, Pa., for Philadelphia Athletic Club Health Institute and a prospective purchaser.

Samuel Brodsky, Philadelphia, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The question before us is whether we should appoint a trustee for the Philadelphia Athletic Club, Inc. ("the debtor"), a Pennsylvania corporation, which filed a petition for reorganization on August 18, 1980, and which has since been operating as a debtor in possession. On December 1, 1980, two of the debtor's stockholders, Elias H. Stein ("Stein") and Leon W. Silverman ("Silverman") filed an application for the appointment of a trustee. Our review of the evidence and the law applicable thereto leads us to the conclusion that we should appoint a trustee.

The facts of this case are as follows:[1] In 1973, Samuel Rappaport ("Rappaport"), Elias Stein ("Stein") and Leon W. Silverman ("Silverman") formed a partnership known as Samuel Rappaport Investments ("SRI"). Pursuant to their agreement, Rappaport was to have a 50% interest and Stein and Silverman were each to have a 25% interest in the business which was to operate certain real estate owned in whole or in part, by SRI.[2]

About the time of its formation, SRI acquired all of the stock of the debtor and began to operate the building located at 304–20 North Broad Street, Philadelphia, Pennsylvania, which building was and is the debtor's only asset. Soon after SRI acquired the stock of the debtor, the debtor's bank account was closed and, thereafter, all of the debtor's income was deposited in and all of the debtor's expenses were paid from SRI's account. In addition, no separate books and records were kept for the debtor but, instead, the income and expenses of the debtor were recorded in the books and records of SRI without any notation that they were attributable to the debtor. Although Rappaport testified that he could tell from the books and records of SRI exactly what income and expenditures were the debtor's, Rappaport concedes that, without his aid, no one else could do so. Hence, neither pre nor post-petition creditors of the debtor, nor Rappaport's partners would be able to verify his statements as to which receipts or disbursements were attributable to the debtor. It goes without saying that this is no way to operate a business under chapter 11. Furthermore, since 1973, the debtor has not filed its own tax returns, its income and expenses being included in SRI's returns. Since § 1107(a) of the Code requires the debtor, as debtor in possession, to perform

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. SRI has the sole equity ownership of the following property in Philadelphia: 1605–21 Sansom Street; 1300 Sansom Street; 102–24 South 13th Street (excluding 108 and 110); 118–22 South 16th Street; the Northeast corner of Broad and Locust Streets. SRI owns 75% of the ownership interest in Samuel Rappaport Associates which owns: 1300, 1304 and 1306 Chestnut Street; 1621 Chestnut Street; 1633 Chestnut Street; and 1750 acres in Hammonton, New Jersey. SRI also owns 75% of Victory Investments which owns: 1001–13 Chestnut Street; 726–28 Market Street. SRI also owns 60% of Market Street Associates which owns 112 Market Street. SRI owns 50% of Chestnut Investments which owns 910–16 Chestnut Street.

"all the functions and duties" of a trustee, and since § 704(7) mandates that the trustee and, hence, the debtor in possession, to file all tax returns arising out of the operation of the debtor's business, it is gross mismanagement for the determination of debtor's income and expenses, and the filing of the debtor's tax returns, be dependent on the resolution of one individual.

In 1976, a certificate of amendment was filed altering the debtor's articles of incorporation to provide that the only purpose of the debtor was to hold title to real property as a nominee or straw party. Silverman testified that this was done on the advice of tax counsel to reflect what SRI and the debtor had already been doing.

Sometime thereafter, there arose a dispute between Rappaport and the applicants which eventually resulted in litigation in a state court on the issue of whether the applicants still have an interest in SRI. Rappaport contends that the applicants have no interest in SRI because they failed to contribute their share of the moneys needed by SRI, while the applicants assert that they continue to have their original interests. No decision has been rendered to date by the state court on that issue.

In his testimony to determine whether the court should appoint a trustee Rappaport admitted that the purpose of the filing under chapter 11 was to eliminate the interest of the applicants, if any, in the debtor and the debtor's property. In furtherance of that end, Rappaport has filed a plan of reorganization for the debtor which provides that the debtor's realty (the building at 304–20 North Broad Street, Philadelphia) is to be sold to Rappaport for an amount which will pay all of the administrative expenses and all of the claims of the debtor's creditors in full but will not pay anything to SRI, the owner of the stock of the debtor. Consequently, under Rappaport's plan, the applicants would not receive anything even if it is later determined by the state court that they do have an interest in SRI.

Prior to the filing of the petition, Rappaport had managed the debtor's property for SRI and, since that time, has continued to operate the debtor's property but has done so through Samuel Rappaport Management ("SRM"), a sole proprietorship owned by Rappaport. SRM charges a 3% management fee for its services and an application, filed with this court, for authorization to pay that fee was objected to by the applicants, and is presently under advisement.

■ It is on the basis of all of the foregoing facts that the applicants assert, and we agree, that an impartial trustee should be appointed to take control of the debtor and the debtor's property. Because Rappaport admits that he has a personal interest in the debtor's sole realty and that, in fact, he plans ultimately to obtain its sole ownership, we conclude that he is incapable of dealing with the debtor as a fiduciary. Rappaport has refused to consider a bid of two million dollars for the property which was made by a third party. Such a bid would pay, not only all administrative expenses and all unsecured creditors in full, but will make a payment to SRI, the debtor's stockholders.

In response, Rappaport contends that, since his plan would pay all creditors and all administrative expenses in full, there is no need to seek any higher bids.

We disagree. Although the primary purpose of the bankruptcy courts is to preserve the debtor's estate in order to protect its creditors, where, as here, the rights of all creditors are fully protected, it is incumbent on the court to seek to protect the interests of the equity holders as well. This is clear, particularly in the case of the appointment of a trustee. Section 1104(a)(2) states that the court shall appoint a trustee if it is in the interests of creditors, of any equity security holders or of any other interests of the estate. While in this case, it is clear that, under the plan proposed by Rappaport, all creditors will be protected whether or not a trustee is appointed, we must also look to the interests of the equity holders. SRI is the sole equity holder of the debtor and Rappaport argues that he is the sole remaining partner of SRI. However, the state court before which that issue is pend-

ing has not yet determined that fact and the applicants contend that they still have an interest in SRI. Because of this conflict, we conclude that it is in the best interests of all that an impartial trustee be appointed who will preserve the property of the debtor who will meticulously keep its books and records and who will protect the interests of all who claim an interest in the debtor.

The applicants cite two cases which they claim support the appointment of a trustee when it is in the best interests of equity holders and creditors. *In re Bel Air Associates, Ltd.*, 2 C.B.C.2d 103, 4 B.R. 168 (Bkrtcy.W.D.Okl.1980); *In re Hotel Associates, Inc.*, 3 B.R. 343, 1 C.B.C.2d 733 (Bkrtcy.E.D.Pa.1980). The facts in *Hotel Associates* are similar to the facts of the case at bench in that, in both cases, the debtor had failed to keep adequate business records and there were allegations that the assets of the debtor had been commingled with the assets of other entities in which the principals of the debtors had an interest. The bankruptcy court in *Hotel Associates* concluded that "due to the failure of the debtor to keep adequate books and records, to properly maintain the hotel while it was within its control and in order to open the possibility of other plans being presented, the appointment of a trustee is clearly in the interests of creditors." *Id.* at 736, 3 B.R. at 345. In the instant case, because of the failure of the debtor to keep adequate books and records, the commingling of the debtor's assets with the assets of SRI, and the admittedly adverse interest between the operator of the debtor by its managing official (Rappaport) and the alleged equity holders (the applicants), we conclude that it is in the best interests of creditors, equity holders and all other parties in interest, to appoint a trustee to investigate the financial affairs of the debtor to determine whether (due to the commingling of funds) certain assets held by SRI should be included in its schedules as assets of the debtor or whether other bids on the property of the debtor would be more in the interests of the other interested parties.

With respect to the other case cited by the applicants, we find it inapposite here.

In *Bel Air*, the bankruptcy court refused to appoint a trustee where the actions complained of by the applicant (a limited partner of the debtor) were not in violation of the state partnership law and had been agreed to by the applicant. In the instant case, while the applicants did approve of the method by which the debtor commingled its assets with those of SRI and while the commingling does not appear to be in violation of any law, the applicants complain that the actions of the debtor since the filing of its petition (the separation of the assets and debts of the debtor from those of SRI and the attempted divestiture of the equity holders of SRI from any interest in the debtor) are a fraud on the alleged equity holders and on the court. We agree with the applicants that this distinguishes the instant case from *Bel Air* and is cause for the appointment of a trustee.

Section 1104 of the Code deals with the appointment of a trustee in a reorganization proceeding and provides:

§ 1104. Appointment of trustee or examiner.

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

We are of the opinion that, in addition to being in the interests of the debtor's

"equity security holders, and other interests of the estate" the appointment of a trustee is mandated by § 1104(a)(1) "for cause, including strong evidences of gross mismanagement of the affairs of the debtor by current management...."[3]

Rappaport argues, however, that a trustee would not be able to operate the debtor's property because the rentals are not enough to pay the expenses. He alleges that the only reason that the debtor has been able to operate to date is that he has been loaning it money to operate. Since he has not offered any tangible proof of the truth of any of those assertions, we conclude that such unsupported allegations are not sufficient to negate our determination to appoint a trustee where we have found that there is other cause for such an appointment. Furthermore, we resolve that even if the above assertions by Rappaport are true, they provide additional cause for the appointment of a trustee. If the debtor cannot operate profitably, that fact should be disclosed to all creditors[4] and real efforts should be made to improve the efficiency of the debtor's operation or to liquidate the debtor's property. We conclude that this cannot be done without the efforts of an impartial trustee to protect the interests of *all* parties who have an alleged interest in the debtor.

Rappaport also contends that the appointment of a trustee will drive down the price which has been bid on the debtor's property. But he offered no evidence to support this contention. Furthermore, there is already a bid of two million dollars for this realty. At one of the hearings, the bidder's attorney appeared to express his support of the application for the appointment of a trustee. We conclude that, for all of the above reasons, there is cause for the appointment of a trustee.

---

**3.** This is because of the fact that no separate books and records were ever kept by the debtor. Therefore, it is impossible to conclude whether Rappaport has been milking the debtor as the applicants contend or whether Rappaport has been supporting the debtor by contributing large sums of money to the debtor as Rappaport asserts.

**4.** Although the debtor has been filing operating statements with the court which show losses, the applicants dispute the accuracy of those statements. Evidence sufficient to allow us to form an opinion on this point was not presented, in part because of the lack of adequate records of the debtor.