In re NAUTILUS OF NEW MEXICO, INC., fka Fitness Services Limited, Employer ID No. 85–0259312, Debtor.

Bankruptcy No. 11–87–00459 MA.

United States Bankruptcy Court, D. New Mexico.

March 11, 1988.

Bill J. Sholer, Albuquerque, N.M., for debtor.

P. Diane Webb, Asst. U.S. Trustee, Albuquerque, N.M.

Harry Relkin, Albuquerque, N.M., for General Members.

John F. Caffrey, Albuquerque, N.M., for Western Bank.

Jan E. Mitchell, Asst. U.S. Atty., Albuquerque, N.M.

Peter F. Lindborg, Albuquerque, N.M., for Elks, Weber and Lindborg.

Donald D. Becker, Albuquerque, N.M., for Riverpoint Members.

Filbert J. Montes, Albuquerque, N.M., for General Unsecured Creditors.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for final hearing on the General Members Committee's Motion for Appointment of Trustee under 11 U.S.C. § 1104. Having considered the testimony, the exhibits and arguments of counsel and having taken notice of the bankruptcy files, the Court finds that the motion is well taken and should be granted.

### FACTS

On March 5, 1987, the debtor, Nautilus of New Mexico, Inc., (Nautilus) filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code and has continued in operation as a debtor in possession pursuant to 11 U.S.C. § 1107.

Nautilus was incorporated in New Mexico on March 3, 1978. Its primary business is the operation of fitness centers/health clubs in Albuquerque, New Mexico. As of March 5, 1987, Nautilus was operating five centers: the Riverpoint, Carlisle, San Mateo, Wyoming and Juan Tabo clubs.

Since incorporation, all issued and outstanding shares of stock have been owned either individually by Alex Hudson or jointly by Alex Hudson and his wife Suzanne Hudson. Alex Hudson is the president, treasurer and sole director of Nautilus. Suzanne Hudson is vice-president and secretary. All management is performed by Alex Hudson, Suzanne Hudson and Tray Waring, an employee responsible for financial affairs.

Nautilus has maintained its primary banking relationship with Western Bank of Albuquerque (Western) since incorporation. The Hudsons also have an extensive personal banking relationship with Western. Since 1984, both Nautilus and the Hudsons have had loans with Western that are "cross guaranteed;" i.e., the Hudsons have individually guaranteed the corporate debts and Nautilus has guaranteed the Hudsons' personal debts.

Nautilus owns no real property; all five of its clubs were located on leased premis-

es, with all leases guaranteed personally by Alex Hudson. Since filing the petition, three clubs have closed after consent orders were entered terminating the automatic stay: the Juan Tabo, Carlisle and San Mateo clubs. Thus, two clubs remain in operation, the Riverpoint and Wyoming clubs.

The Riverpoint club is leased from Alex and Suzanne Hudson. On November 30, 1985, Nautilus entered into a ten year lease for this location, at a contract rate of $12.00 per square foot per year on a net lease basis to the Hudsons. The corporate minutes produced during discovery and the hearing on this motion reflect an authorization for a ten year lease to start in late 1985 at a rate of "approximately $10.00 per square foot" with escalation clauses for subsequent years.[1] The rent for Riverpoint is considerably higher per square foot than the rents charged at other locations, which ranged from $3.17 to $9.00. Alex Hudson testified that in his opinion, the rent charged was reasonable and fair.

Although Nautilus leases the Riverpoint location, Nautilus is responsible for the Hudsons' debt on the property itself. In 1984 the Hudsons purchased the land on which the Riverpoint club is located. This purchase was financed by Western and guaranteed by Nautilus. In 1985 the Hudsons approached Western for a $2.2 million loan to renovate the property; this loan was refused. When Nautilus shortly thereafter paid off an existing $750,000.00 loan to Western, however, the $2.2 million loan was extended. This loan was also guaranteed by Nautilus. A Western Bank officer testified that had the $750,000.00 Nautilus loan not been paid, the $2.2 million loan could not have been extended because the combined loans would have been over its lending limits; thus, Western views Nautilus and the Hudsons as a single entity. In September 1986, Nautilus pledged its assets as additional collateral to secure a second mortgage in the amount of $125,000.00 to cover cost overruns on the renovation project. In the fall of 1987, after the bankruptcy petition, the Hudsons obtained another personal loan from Western Bank in the amount of $60,000.00 to pay interest due on the renovation loan. As security for this loan, the Hudsons granted a security interest in a 1985 pickup truck and a 1984 Mercedes, assets listed as belonging to the debtor on the original chapter 11 petition.[2] In sum, on the chapter 11 petition Nautilus listed a debt to Western Bank in the amount of $2,325,000.00, of which only $175,000.00 was a direct liability, the balance representing corporate guarantees of the Hudsons' personal loans.

In addition to being majority shareholder, officer, director and manager, Alex Hudson is also a creditor of Nautilus. On the chapter 11 petition, debtor lists Alex Hudson as a creditor for back rent on the Riverpoint club in the amount of $107,913.56. Rent has continued to accrue under the lease post-petition in the amount of $34,000.00 per month, plus real estate taxes. From the operating reports filed in the case it is not possible to determine the amount of post-petition rents that have been actually paid to Alex Hudson. The total 1987 rents paid (which includes rent before the March petition and prepaid rent for January, 1988) to Hudson were approximately $312,083.60.

As creditor of Nautilus, Alex Hudson has filed a motion to terminate the automatic stay on the Riverpoint club. This motion, filed just four days before the hearing on this motion to appoint a trustee, was accompanied by a stipulation between Alex Hudson, as creditor, and Alex Hudson, as

---

1. When questioned about the discrepancy between the minutes and actual lease, Mr. Hudson testified that there were other meetings conducted at which the increase was authorized, but that his former attorneys had kept the minute books and he did not know where they were.

2. Alex Hudson testified, however, that he was unsure about the true ownership of these vehicles. Although they appear on the debtor's books, were listed in the chapter 11 petition as assets, and the debtor responded in interrogatories that they were property of the estate, Mr. Hudson thinks that title was never actually transferred to the corporation from a predecessor partnership.

representative of the debtor, in which Nautilus and the Hudsons request the automatic stay be dissolved so that Alex Hudson may take steps to regain possession of the Riverpoint property. As grounds, the parties allege that "the debtor-in-possession has failed to assume the subject lease within the sixty day period provided by Section 365(d)(4) of the Bankruptcy Code, and on March 4, 1987, rejected said lease, which rejection became effective on May 3, 1987." Additionally, they allege that Nautilus has neither surrendered the property nor paid rent on a timely basis for the post-petition occupancy. The General Members Committee has since moved and been granted leave to intervene in this stay motion. At the hearing Mr. Hudson was questioned regarding the reasons for his filing the motion at this time. He responded that he needed to protect his own interests, and, should a trustee be appointed, he would have to make other arrangements to lease the property in order to get enough money out of it to amortize the loan due Western.[3]

Between March 5, 1987 (date of petition) and November 30, 1987, Nautilus suffered a net loss in excess of $908,000.00.[4] When questioned how the business had continued to operate, Alex Hudson testified that he had used personal funds and that certain expenses were routinely not being paid. Out of this $908,000 loss, the November report indicated that $124,095.15 in expenses and $67,220.25 in taxes remained unpaid. Included in the tax figure are over $24,000.00 in real estate taxes due under the Riverpoint lease, $35,000.00 in gross receipts taxes, and $5,000.00 in state withholding taxes.

On September 25, 1987, Alex Hudson sold 52 "machines" for $66,443.36. On November 23, 1987, he sold an additional 27 machines for $33,149.25. At various times between May, 1987, and November, 1987, bicycles, office furniture and computer equipment were sold for $3,650.90. Alex Hudson testified that the office furniture was sold by a janitor at a flea market, and movants' Exhibit 8 shows that the janitor was paid a 50% "storage and sales commission" for his services. Alex Hudson also testified that the machines sold were from the Carlisle and Juan Tabo clubs, and he had sold the equipment on behalf of Western after the automatic stay had been terminated. He also testified that whatever office equipment was not being used, from all locations, was sold.

Tray Waring testified regarding financial affairs. He testified that approximately $2,000.00 had been paid to the debtor's former accountants, who have continued in that capacity in the chapter 11 despite their unenviable location on the list of top twenty unsecured creditors, and without an order of appointment. During the chapter 11, the Western Bank prepetition debt of $175,000.00 has been paid in full.

Alex Hudson testified that he had convened a meeting of the Riverpoint Membership Committee at which he showed them excerpts of debtor's disclosure statement and plan. The attorney for that committee was not informed of and did not attend this meeting. At the time of the meeting the Riverpoint Committee also had a pending motion to appoint a trustee. He informed the Committee that if it pursued the motion to appoint a trustee he would protect his own self interests to ensure that rent continued to flow to him, and that if it stopped he would close the Riverpoint Club and liquidate Nautilus. The Riverpoint Committee then voted and "approved" the Nautilus plan of reorganization and withdrew their motion to appoint a trustee.

Finally, a review of the bankruptcy files in this case indicates the following: (1) No

---

**3.** Apparently he assumed either that a trustee would decide that the $12.00 per square foot was not "fair and reasonable" rent, or would decide that the Riverpoint location could not be profitable if it had to pay this rent and therefore close the facility. Projections prepared by the debtor and filed in response to interrogatories by the movants support this conclusion. Current management does not expect Riverpoint to be profitable until sometime late in 1988. The movants contest this projection, claiming that revenues are overly optimistic and expenses too low for the volume of memberships projected.

**4.** The November report is being used because the December operating report lists the cumulative loss as "?".

orders have been entered allowing sales outside of the ordinary course of business; (2) No orders have been entered allowing payment of compensation or reimbursement of expenses to any accountants; (3) No orders have been entered approving the employment of any professionals other than the debtor's bankruptcy attorney; (4) No orders have been entered allowing payments to sales agents; (5) The only order entered pertaining to a termination of the automatic stay for personal property is for personal property at the Carlisle location exclusively; (6) No order has been entered approving the debtor's disclosure statement as containing adequate information; (7) The October and November operating reports were not filed until the Court so ordered, upon motion and hearing by two membership committees; (8) As of the date of this memorandum opinion, the January operating report, due February 22, remains unfiled.

## DISCUSSION

Movants ask the Court to appoint a trustee for the estate of the debtor under 11 U.S.C. § 1104. That statute provides, in part:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest *or the United States trustee*, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

In this action the Committee alleges that current management has been incompetent both before and after commencement of the case; that the management, ownership, and creditor interests are extensively entangled, resulting in a conflict of interest for the debtor and preferential treatment for some creditors; and that the debtor in possession has violated § 327 (employment of professional persons), § 330 (compensation of officers), § 363 (use, sale, or lease of property), § 364 (obtaining credit), and § 1125 (postpetition disclosure and solicitation) of the Bankruptcy Code.

Appointment of a trustee under 11 U.S.C. § 1104 is an exceptional remedy that should not be made lightly. *In re William A. Smith Construction Company, Inc.*, 77 B.R. 124, 126 (Bankr.N.D.Ohio 1987), *In re The Bible Speaks*, 74 B.R. 511, 512 (Bankr. D.Mass.1987), *In re McCorhill Publishing Inc.*, 73 B.R. 1013, 1016–17 (Bankr.S.D.N.Y.1987). Normally the Bankruptcy Code contemplates that the debtor will remain in possession. *See* 11 U.S.C. §§ 1107, 1108. Therefore, the Courts require the party seeking appointment to bear the burden of proof, which must be sustained by clear and convincing evidence. *See, e.g. In re William Smith Construction Company, Inc.*, 77 B.R. at 126, *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 159 (Bankr.D.Me. 1982), *In re Tyler*, 18 B.R. 574, 577 (Bankr. S.D.Fla.1982).

The Court concludes that the General Members Committee has established that a trustee should be appointed for cause under 11 U.S.C. § 1104(a)(1) as well as in the best interest of creditors, the equity security holders, and other interests of the estate under § 1104(a)(2).

## I MISMANAGEMENT

In order to appoint a trustee under 11 U.S.C. § 1104(a)(1) on the grounds of "mismanagement" the Court must find "gross" mismanagement as opposed to "mere" mismanagement. *In re William A. Smith Construction Company Inc.*, 77 B.R. at 126.

As evidence of mismanagement, the movants cite Riverpoint's history of losses and

its continuing losses during the bankruptcy. The fact that a business decision turned out to be unprofitable is not *per se* gross mismanagement as a matter of law. The Court finds that movants have not established gross mismanagement by clear and convincing evidence. Therefore, a trustee is not properly appointed on those grounds.

## II CONFLICT OF INTEREST

Under 11 U.S.C. § 1104(a)(2) the Bankruptcy Court is allowed to exercise its equity powers to appoint a trustee to protect the interests of creditors, equity security holders and other interests in the debtor's estate. *In re Russell,* 60 B.R. 42, 45 (Bankr.W.D.Ark.1985); *In re Eichorn,* 5 B.R. 755, 758 (Bankr.D.Mass.1980).

A debtor in possession has the fiduciary duty to preserve estate assets for the benefit of creditors. *In re Four Score Broadcasting, Inc.,* 77 B.R. 404, 407 (Bankr.W.D.N.Y.1987). When a debtor in possession is incapable of performing these duties a trustee is properly appointed. *See In re McCorhill Publishing, Inc.,* 73 B.R. 1013, 1017 (Bankr.S.D.N.Y.1987); *In re William H. Vaughan & Co., Inc.,* 40 B.R. 524, 526 (Bankr.E.D.Pa.1984); *In re Ford,* 36 B.R. 501, 504 (Bankr.W.D.Ky.1983); *In re Philadelphia Athletic Club, Inc.,* 15 B.R. 60, 62 (Bankr.E.D.Pa.1981).

The Court is convinced that Alex Hudson is incapable of dealing with Nautilus as a fiduciary. First, as manager, he decides which creditors are to be paid, and when. Alex Hudson is also one of the largest creditors and admits his absolute need for monthly payments from the debtor. The Court find this to be a direct conflict.

Second, Alex Hudson stated that the only way the debtor had remained in business since the chapter 11 was by letting some expenses go unpaid. Other evidence shows that $124,095.15 in expenses and $67,220.25 in taxes are in this category. It is uncontradicted, however, that Riverpoint rent has in large part been paid. The movants allege that these payments have been preferential.

Western Bank, the ultimate recipient of the rents, appeared at the hearing to oppose appointment of a trustee and argued that if the movants thought the payments were preferential they could institute suit to recover them or file objections. While true, that argument is not relevant to this motion to appoint a trustee. It is the fiduciary duty of the debtor to protect and preserve estate assets, not the duty of creditors. *See In re Russell,* 60 B.R. 42, 47 (Bankr.W.D.Ark.1985) and cases cited therein. What is relevant is that *if* the allegations are true, the Court could not expect Nautilus to pursue recovery with Alex Hudson in charge. *See In re Concord Coal Corporation,* 11 B.R. 552, 554 (Bankr.S.D.W.Va.1981) (Investigation of transfers to one-third owner could not be expected when that owner was in charge of management.)

It is also irrelevant that movants have not established all elements of a preference action. *See In re William H. Vaughan & Co. Inc.* 40 B.R. at 526 (In motion to appoint trustee the failure to prove every element of a preference is not determinative, to require so would amount to a "pretrial" of the complaint which the trustee will likely bring if the movant is successful.) The movants have established a conflict of interest, payments to Alex Hudson, and lack of payments to other creditors. Appointment of an independent trustee to investigate these transfers is in the best interest of the estate.

Third, Alex Hudson is in an adversarial position with the debtor. He has filed a motion to terminate the automatic stay to regain possession of Riverpoint. During the hearing he freely admitted that he would protect his own interests first. This being the case, the Court finds that Alex Hudson is incapable of dealing with the debtor as a fiduciary, and that appointment of a trustee would better serve the interests of all parties.

Finally, the Court notes that this chapter 11 case is over one year old. Post-filing losses are over $900,000.00. No disclosure

statement has been approved. If the debtor cannot operate profitably or successfully reorganize, that fact should be disclosed to creditors before more losses are incurred. *See In re Philadelphia Athletic Club, Inc.,* 15 B.R. at 64. Alex Hudson is in a position of earning $34,000.00 per month as an administrative expense of the bankruptcy. It would serve his interests to continue in chapter 11 even if there is no chance of a successful reorganization. An independent trustee is needed to evaluate whether reorganization is possible.

## III VIOLATIONS OF THE BANKRUPTCY CODE

■ Movants also urge the Court to appoint a trustee under 11 U.S.C. § 1104(a)(1) and allege violations of the Bankruptcy Code as grounds. As discussed below, the Court finds that debtor did violate certain Code sections. While any one may be *de minimis* and by itself not justify appointment of a trustee, together they amount to "cause" as required by 11 U.S.C. § 1104(a)(1).

### A. *11 U.S.C. § 327.*

11 U.S.C. § 327(a) provides:

Except as otherwise provided in this section, the trustee, *with the court's approval,* may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title [11 USCS §§ 101 et seq.].

(emphasis added). Undisputed testimony indicates that Nautilus continued to use its pre-petition accountants after filing the case, and that these accountants are among the largest twenty unsecured creditors. There is no order approving their employment as required by 11 U.S.C. § 327(a). Furthermore, their interests may be adverse and they may not be disinterested. Debtor violated 11 U.S.C. § 327(a).

### B. *11 U.S.C. § 330.*

11 U.S.C. § 330(a) provides:

(a) After notice *to any parties in interest and to the United States trustee* and a hearing, and subject to sections 326, 328 and 329 of this title [11 USCS §§ 326, 328 and 329], the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title [11 USCS § 327 or 1103], or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title [11 USCS §§ 101 et seq.]; and

(2) reimbursement for actual, necessary expenses.

Thus, notice and opportunity for a hearing are required before compensation or reimbursements are paid to a professional person. The testimony at the hearing indicated that the accountants were paid approximately $2,000.00 postpetition.

There has been no notice, hearing, or order authorizing these payments. Therefore, debtor has violated 11 U.S.C. § 330(a).

### C. *11 U.S.C. § 363.*

11 U.S.C. § 363(b)(1) provides:

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

Thus, sales outside of the ordinary course of business require notice and hearing. Debtor sold bicycles, office furniture, computer equipment and machines without notice or hearing or a Court order and, therefore, violated 11 U.S.C. § 363(b)(1).

### D. *11 U.S.C. § 364.*

11 U.S.C. § 364(c) provides, in part:

If the trustee is unable to obtain unsecured credit allowable under section

503(b)(1) of this title [11 USCS § 503(b)(1)] as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt— ...

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

Testimony indicates that liens were granted on vehicles in order for the Hudsons to obtain credit. This was done without notice, hearing, or court order. Although the credit was extended to the Hudsons, the credit was for interest payments on a note that the debtor had guaranteed. The record is not sufficiently clear, however, to determine whether the liens were on "property of the estate" because ownership of the vehicles is unknown. Therefore, while it appears that 11 U.S.C. § 364(c) has been violated, the Court cannot so rule.

E. *11 U.S.C. § 1125.*

11 U.S.C. § 1125(b) provides:

An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title [11 USCS §§ 101 et seq.] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The Court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

Testimony at the hearing indicates that Alex Hudson convened a meeting of the committee, at which the committee's attorney was not present, and at which he presented various plans. There is also testimony that at this meeting there were discussions of closing down the Riverpoint club, converting to chapter 7 and liquidating the corporations, and Alex Hudson's needs to protect his own self interest. Votes were taken.

The Court finds that these actions, taken together, amount to a soliciation of acceptance of a plan, and fall within the scope of 11 U.S.C. § 1125(b). Since there has been no court approval, after notice and hearing, of a disclosure statement, the Court concludes that debtor violated 11 U.S.C. § 1125(b).

F. *Local Bankruptcy Rule 11–105.*

Local Rule 11–105(a) requires a debtor in possession to file monthly operating reports on or before the 22nd day of each month for the preceding month. Nautilus has repeatedly ignored this rule.

CONCLUSION

The Court finds sufficient cause for a trustee to be appointed to manage the debtor's estate and that the best interests of the creditors and the estate will be served by this appointment.

This memorandum opinion constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052. An appropriate order shall enter.