**In the Matter of FIESTA HOMES OF GEORGIA, INC., Debtor.**

**Bankruptcy No. 89–50288.**

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Dec. 21, 1990.

Ward Stone, Jr., Macon, Ga., Robert L. Porter, Jr., Douglas, Ga., for debtor.

Stephen Lamar Jackson, Waycross, Ga., for Objecting Creditor Trust Co. Bank.

## MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

On October 25, 1990, a Continued Hearing on Confirmation of the Debtor's Plan of Reorganization and Hearing on Motion for Confirmation pursuant to 11 U.S.C. Section 1129(b) was held in Savannah, Georgia. An Objection to Confirmation was raised by Trust Company Bank of Coffee County ("Trust Company"), a secured creditor, alleging that the proposed plan does not meet the good faith requirement of Section 1129(a)(3). Trust Company has further moved for the appointment of a Chapter 11 Trustee or, in the alternative, for the conversion of this case to Chapter 7 of the Bankruptcy Code. Upon consideration of the evidence adduced at trial, the history of the case, and the briefs and other documentation submitted by the parties, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Debtor, a closely held corporation located in Douglas, Georgia, is a manufacturer of mobile homes. The three remaining shareholders of the Debtor corporation are Jordan Ashley Paulk, President and Chairman of the Board of Directors; Rufus Paulk, Director and uncle of Jordan Ashley Paulk; and James W. Anderson, Vice President, Secretary, Treasurer and Director.

Following a general slump in the mobile home industry, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code with this Court on October 23, 1989. After an unsuccessful attempt at reorganization through a shift in product line, the Debtor has proposed a Chapter 11 liquidation plan which calls for the liquidation of remaining assets of the estate and the pursuit of each cause of action under the Bankruptcy Code which could yield a recovery in excess of $3,500.00. The plan proposes distribution of the liquidation proceeds in accordance with the priority provisions of the Bankruptcy Code and specifically provides that unless all allowed claims are fully paid there will be no distribution to shareholders of the Debtor corporation.

In March or April of 1990, the Debtor ceased operation as a manufacturer of mobile homes. Since that time the only operation of the Debtor has been liquidation of its assets. The tangible assets of the Debtor have been substantially liquidated, and at least tentative arrangements have already been made for the auction of the remnants of the tangible assets.

The Debtor's petition lists five individuals, Jim Anderson, Ashley Paulk, Rufus Paulk, John Anderson, and Ellene Paulk as insiders. The Debtor's Disclosure Statement reveals that $179,000.00 has been transferred to the named insiders within one year of the filing of this bankruptcy under circumstances that might allow their recovery under 11 U.S.C. Section 547. Trust Company's lawyer has identified additional transfers for a total of $660,436.70 which may also be subject to recovery as preferences, including $438,945.01 transferred to the named insiders identified by the Debtor. A cursory examination of the Debtor's schedules reveals that checks were written totalling over $453,692.00 to four of the insiders identified in the Debtor's Disclosure Statement within one year of the Debtor's filing. The Debtor's counsel has stated that he has investigated the transfers and believes that all except the $179,000.00 transferred to the named insiders are not subject to be set aside. That issue is not before the Court at present and the veracity of the Debtor or counsel is by no means in question here. I set these figures forth merely to show the potential magnitude of the preference recovery at issue.

The controversy before me arises due to the nature of the relationship between the officers of the Debtor corporation and the named insiders. Ellene Paulk is the mother of the Debtor's president and it was established at trial that certain retirement funds of hers were invested by the Debtor's president in the Debtor corporation, perhaps without her knowledge or consent. Rufus Paulk is a very close uncle of the Debtor's president who helped raise him. John Anderson is the father of the vice president of the debtor corporation. James Anderson is the vice president of the Debtor. Finally, Jordan Ashley Paulk is the Debtor's president. These facts clearly distinguish this case from the ordinary corporate reorganization case where preference recoveries sought from insiders typically involve recovery from unrelated corporate officers and directors.

The Debtor made several payments to the Coffee County Bank within ninety days prior to the October 26, 1989, filing date: $18,213.20 on August 18, 1989; $22,783.20 on September 25, 1989; $90,000.00 on October 13, 1989; and $90,945.27 on October 24, 1989. The payments reduced the balance on a promissory note executed by the Debtor in favor of Coffee County Bank dated March 21, 1989, in the principal amount of $187,962.00. That promissory note was guaranteed by Rufus Paulk, Ashley Paulk and Jim Anderson jointly and severally. Thus the payments made by the Debtor within 90 days of its filing substantially reduced the contingent liabilities of these three insiders. The Objector/Movant, Trust Company, holds a promissory note executed by the Debtor in the amount of $350,000.00 on September 26, 1986, secured by a security interest in all accounts and general intangibles of the Debtor, including the proceeds thereof.

The Debtor's Disclosure Statement provides for recovery of preferences as follows:

> The Company will also attempt to recover any payment to a creditor or any other party, made within 90 days (or one year in the case of a [sic] "insider") of the filing of the Bankruptcy Case which are recoverable under Section 547 of the Bankruptcy Code. The Company has determined that it will not be cost effective to pursue any such preference action in which the amounts [sic] sought to be recovered is less than $3,500.00. A list of possible preferences showing the recipient, the dates of transfer and the amount of each payment is attached hereto as Exhibit "B".

The Debtors Plan, on the other hand, does not specifically provide for the recovery of preferences but rather contains a general provision for recovery of assets for the estate:

> The Debtor shall pursue claims and causes of action now pending in any Court or existing, but not subject of any lawsuit, which might yield a recovery to the Estate, if the Debtor deems pursuit of such claims cost-effective and in the best interest of the Estate. Nothing in this paragraph shall prohibit the Debtor from compromising or submitting to arbitration as provided under the Bankruptcy Code, or under the Rules of Bankruptcy Procedure, any claim of the Estate against any party. After the Effective Date, the Debtor may compromise any such claim regarding which the amount in dispute is $5,000.00 or less, without application to the Court, notice or hearing.

I note that there is an ambiguity between the minimum preference amount to be pursued in the Disclosure Statement, $3,500.00, and the minimum amount of the causes of action to be pursued in the Plan, $5,000.00. I also note that the Plan provisions vest in the debtor the determination of whether "pursuit of such claims [is] cost effective." Since Debtor's counsel stated at the hearing on this matter that each preference action which would yield a recovery in excess of $3,500.00 would be pursued, I do not doubt that to be the Debtor's intent, however, it is important to point out the aforementioned ambiguity.

In over a year, no action has been taken to collect preferences. While the Debtor's president insists that he will vigorously pursue preferences, he has not voluntarily

returned the preferential payment which he acknowledged receiving. I recognize the complexity of the case and the fact that the Debtor has been diligent in proposing a plan and has complied with the other applicable provisions of Title 11, including timely filing of operating reports and tender of all fees payable to the United States Trustee. Nevertheless, no action to collect the largest single asset available for distribution to creditors has commenced.

When Debtor's plan was submitted for approval by its creditors, creditors in classes four and twelve filed ballots rejecting the plan. Objector/Movant Trust Company Bank of Coffee County is the sole holder of a class Four Claim and is the largest class twelve creditor.

### CONCLUSIONS OF LAW

11 U.S.C. Section 101(30) defines "insider" as follows:

'Insider' includes—

(B) if the debtor is a corporation—

 (i) director of the debtor;

 (ii) officer of the debtor;

 (iii) person in control of the debtor;

 (iv) partnership in which the debtor is a general partner;

 (v) general partner of the debtor; or

 (vi) relative of a general partner, director, officer, or a person in control of the debtor.

It is clear from the Debtor's petition and from the record in this case that substantial transfers were made to insiders as defined by the Code. The Debtor does not dispute this fact and has been candid with the Court regarding this matter. It is also clear that several transfers were made to the Coffee County Bank as payments upon loans guaranteed by insiders.

Trust Company contends that the Debtor's plan has not been proposed in good faith as required under Section 1129(a)(3) or, alternatively, that the case should be converted to a case under Chapter 7 of the Bankruptcy Code under Section 1112 due to the existence of possible causes of action under Section 547 of the Bankruptcy Code against "insiders." Moreover, Trust Com-

pany has rejected the Debtor's plan. The notice to creditors and other parties in interest, prepared by this Court on October 3, 1990, and setting a confirmation hearing date of October 25, 1990, provides:

If the debtor is unable to obtain the requisite votes on the plan of reorganization by the time of this continued hearing, the Court will, at the conclusion of the continued hearing on confirmation, hold a hearing to determine if the case should be dismissed or converted to a Chapter 7 case.

In view of Trust Company's rejection of the Debtor's proposed plan, the Debtor had not obtained the requisite votes on its plan of reorganization by the time of the confirmation hearing. Therefore, by the terms of the October 3rd notice from this Court, this case is ripe for determination of whether dismissal or conversion to a case under Chapter 7 of the Code is appropriate. Debtor, however, filed a "cram down" Motion on September 11, 1990, in accordance with the terms of section 1129(b)(1). Thus, the issue before the Court is whether to confirm the Chapter 11 plan over the objection of classes four and twelve under 1129(b)(1), or whether to dismiss the case or to convert it to one under Chapter 7. Since the proposed plan contemplates liquidation, the practical result of my decision is to determine who will administer the Debtor's liquidation.

11 U.S.C. section 1129(a) sets forth the requirements for confirmation of a plan. The prefatory language is that "[t]he court is to confirm a plan only if all the following requirements are met." The section then sets forth eleven requirements. I find that the first requirement, 1129(a)(1) has not been met.

■ Section 1129(a)(1) mandates that the proposed plan comply with all applicable provisions of Title 11. The Debtor has not proposed a confirmable plan because the requirements set forth in 11 U.S.C. Section 1123(a)(5) have not been complied with. Section 1123(a) outlines the minimum requirements for the contents of a plan. Subsection (a)(5) mandates that the plan must "provide adequate means for the

plan's implementation" and sets forth a nonexclusive list of examples. The plan proposes implementation by current management. However, since the only actions left to be taken to implement the plan are the recovery of preferences, and since the holders of the bulk of the alleged preferences are either the Debtor's management or are close family members of the Debtor's management, and since no action to recover any preferences has been commenced in over a year since the filing of this case, I cannot conclude that there are adequate means for implementation of this plan. The Debtor has not carried its burden of proof on the confirmation issue. *See In re Prudential Energy*, 58 B.R. 857 (Bankr.S.D.N.Y.1986) (Proponents of reorganization plan have burden of proof as to whether requirements for confirmation have been met). I cannot conclude based upon the track record of present management that it would aggressively pursue the preference actions against itself or close family members. As such, the requirements of Sections 1123(a)(5) and 1129(a)(1) have not been met and the plan cannot be confirmed.

■ Alternatively, 11 U.S.C. Section 1129(a)(3) mandates that a plan must be proposed in good faith. The requirement that a Chapter 11 plan be proposed in good faith necessitates a showing that there is a reasonable likelihood that the plan will achieve a result consistent with the Bankruptcy Code. The showing is not determined by what a proponent's behavior was prior to the filing of the bankruptcy petition, but rather upon the proponent's post-petition actions. *In re Texas Extrusion Corp.*, 68 B.R. 712 (N.D.Tex.1986) (Test for good faith proposal of Chapter 11 plan is whether there is a reasonable likelihood that the Chapter 11 plan will achieve a result consistent with the standards governing confirmation of the plan; the test is not based on what the plan proponent's behavior was prior to the petition). The Bankruptcy Court must examine the Debtor's plan and determine, in light of the particular facts and circumstances, whether the plan will fairly achieve a result consistent with the Code. The plan must be viewed in light of the totality of the circumstances surrounding confirmation of the plan. *In re Madison Hotel Assoc.*, 749 F.2d 410 (7th Cir.1984).

■ Viewing this case in light of the totality of the circumstances, I find that there is a serious problem of conflict of interest. Insiders against whom the Debtor is obligated to pursue preference actions include several close members of Debtor's officers' family. This fact alone would present monumental difficulties for management to do what is required by statute. In addition, even if management were able to diligently pursue these actions, there would always be at least the appearance that the actions were not pursued as aggressively as they might otherwise be by a disinterested party, particularly with the benefit of hindsight. In short, the obligation to maximize recovery for the benefit of unsecured creditors by the pursuit of these preferences against close family members, who may well feel morally entitled to the money, flies in the face of human nature and that fact alone is enough to show that impartiality and aggressiveness of the Debtor's officers may be called into doubt at a later time. The situation would be far different if the insider were merely a shareholder or if the amount held by close family members were a small amount. Here, however, the most substantial fund for unsecured creditors to receive are the preferences. Because recovery of the preferences is such a fundamental element of the plan and the defendants and management are so closely related, I am unable to conclude that the plan will "fairly achieve a result consistent with the Code" (maximum recovery by and fair distribution to creditors). Therefore the plan fails to meet the requirements of Section 1129(a)(3) and Debtor's Motion for Confirmation under Section 1129(b)(1) is denied.

■ Alternatively, the presence of a conflict of interest constitutes cause for removal of the Debtor in Possession from administration of this case. *See In re Graf Bros., Inc.*, 19 B.R. 269 (Bankr.D.Me.1982)

(Liquidation by a Debtor in Possession should not be permitted and conversion to Chapter 7 is appropriate in Chapter 11 liquidation case where there may be a conflict of interest between the Debtor and those with whom the Debtor is dealing during the liquidation phase); *cf. In re L.S. Good & Co.,* 8 B.R. 312 (Bankr.N.D.W.Va.1980) (Removal of present management and appointment of Trustee is appropriate where there is a strong probability of conflict of interest such as to hinder management's ability to make impartial investigations and decisions in pursuing claims on behalf of the estate); *In re William Vaughan & Co., Inc.,* 40 B.R. 524, 526 (Bankr.E.D.Pa. 1984) (Removal of Debtor in Possession and appointment of Trustee appropriate following Debtor's failure to commence proceedings for avoidance of transfer where transfer was to Debtor's President and thus transfer would not likely be subjected to requisite vigorous scrutiny); *In re Nautilus of New Mexico,* 83 B.R. 784, 789 (Bankr.D.N.M.1988) (Debtor in Possession has fiduciary duty to preserve estate assets for benefit of creditors and when incapable of performing that duty, Trustee is properly appointed).

The Debtor has argued that the parties have a right to seek the appointment of a trustee at a later time if it is determined that the preference actions were not vigorously prosecuted. However, since this is a liquidation case and litigation of the preferences is essentially all that is left to do, there is no need to balance the propriety of the appointment of a trustee with the present management's ability to run the company. There are no duties to perform aside from those which the present management is least likely to want to perform. Moreover, the cost to creditors to monitor management would be very difficult to assess. 11 U.S.C. Section 1104 authorizes appointment of a trustee if such appointment is in the "interest of creditors." I find that such appointment, in light of the existing conflict of interest of management is clearly in the best interest of creditors. I therefore conclude that a trustee should be substituted to administer the liquidation of Debtor.

The remaining question is whether the case should proceed under Chapter 11 or Chapter 7, or be dismissed. 11 U.S.C. Section 1112 provides a non-exclusive list of reasons for conversion or dismissal of a Chapter 11 case for cause and provides in relevant part:

(b) Except as provided in subsection (c) of this section, on request of a party in interest ... and after notice and hearing, the court may convert a case under this chapter to a case under Chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(2) Inability to effectuate a plan.

The Debtor has proposed a liquidation plan which has failed to be confirmed. There is no alternative plan for the Debtor to propose and the case stands in a posture where either conversion or dismissal is warranted. However, dismissal would deprive creditors of the opportunity of sharing in preference recoveries and would be entirely inappropriate. Since I have concluded that a trustee should be appointed, the choice is whether to proceed under a Chapter 11 with a trustee appointed or to convert to a case under Chapter 7. I conclude that once a decision to remove the Debtor-in-Possession is made and there is no business to operate, but only a liquidation to administer, conversion is the obvious choice.

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that confirmation of the Debtor's plan is denied, and that this case be converted to a case under Chapter 7.