**In re CONCORD COAL CORPORATION, Debtor.**

**E. Newbold SMITH, Plaintiff,**

**v.**

**CONCORD COAL CORPORATION, Defendant.**

**Bankruptcy No. 80–20299.
Adv. No. 80–0196.**

United States Bankruptcy Court,
S. D. West Virginia.

Feb. 2, 1981.

Guy R. Bucci, Charleston, W. Va., for E. Newbold Smith.

Raymond G. Dodson, Charleston, W. Va., for Concord Coal Corp.

## MEMORANDUM OF OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

E. Newbold Smith, the holder of a one-third equity security interest in the Debtor corporation, seeks the ouster of the Debtor's current management and the appointment of a trustee under 11 U.S.C. § 1104. Mr. Smith's request is supported by a unanimous Creditors' Committee.

The matter comes for determination on an application and a complaint filed by Mr. Smith, the complaint seeking injunctive relief in addition to the appointment of a trustee. Injunctive relief was denied on November 17, 1980, and that proceeding was merged with consideration of the application for similar relief and heard on January 30, 1981.

The applicable provision of chapter 11 of the Code provides that:

[T]he court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, . . . or

(2) if such appointment is in the interests of creditors; any equity security holders, and other interests of the estate, . . . . [11 U.S.C. § 1104(a)].

It is reported that few issues dealt with by Congress in enacting the new Bankruptcy Code evoked greater divergence of view than did the standards for the appointment of trustees. *See* 5 *Collier on Bankruptcy* ¶ 1104.01 at 1104–3 (15th ed. 1979). This is at least partially attributable to the merger of several chapters of the old Act, with their differing practices, into a single new chapter 11. It is suggested that Congress intended to adopt a flexible standard so that massive fraud by former management would not automatically require the costly alternative of a trustee where corrective action already had been initiated by the Debtor. *Id.* at 1104–20. Equally, some degree of "mismanagement" is apparently assumed for any debtor compelled to seek protection of the Bankruptcy Code. Accordingly, the creditors' remedy of displacing the debtor's management with a trustee was deemed a decision that would be dictated by the peculiar circumstances of each case and not by such arbitrary factors as the number of stockholders or the amount of assets and liabilities. 11 U.S.C. § 1104(a)(1) and (2).

The two subsections of 11 U.S.C. § 1104(a) authorize the appointment of a trustee (1) for cause, and (2) in the interest of creditors. Collier observes that it is difficult to contemplate a compelling interest of creditors under subsection (2) that would not be a "cause" under subsection (1). *Id.* at 1104–22. It is clear, nevertheless, that fraudulent conduct or gross mismanagement are not the only grounds for appointment of a trustee.

In this case, fraud and dishonesty have been alleged but not proven. The evidence establishes that David E. Walsh, president and owner of one-third of the Debtor's stock, engaged in the desperate "juggling" of assets and liabilities for purposes which may have been either honorable, questionable, or criminal, but which are not altogether unusual for an entity attempting to avoid bankruptcy. Where such conduct is not proven to be criminal but is inimical to the rehabilitation prospects of the debtor, the question becomes whether current management should be displaced by a trustee?

The quality of the Debtor's management is not subject to review only upon a challenge of the nature now before us; it is subject to evaluation at the time of confirmation of a plan. The Code in that regard requires:

The court shall confirm a plan only if all of the following requirements are met:

. . . .

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individuals proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy;

(B) The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

Such an evaluation of management being in prospect ultimately in this case, even though fraud and dishonesty have not been proven, subsection (2) of § 1104(a) renders prudent a serious consideration of the evidence offered.

The Creditors' Committee concedes that David Walsh "runs a good job" from the standpoint of mining techniques used by the Debtor. It seriously faults him in his marketing ability, his equipment maintenance practices, his degree of personal supervision on the job and his ability to inspire confidence in the credit-worthiness of the Debtor. Testimony, Paul Nelson. The evidence supports most of these conclusions and forecasts the likelihood of an unsuccessful rehabilitation plan. That alone would not justify the ouster of management before expiration of its exclusive period for unveiling its own chapter 11 plan. We have not yet reached the 120-day deadline allowed the Debtor for filing its own plan. 11 U.S.C. § 1121(b).

The appointment of a trustee under section 1104(a)(2) in this case is justified by (1) a substantial doubt whether the Debtor's current management in the person of Mr. Walsh can be considered loyal to its goal of rehabilitation, and (2) whether Mr. Walsh can gain and maintain the confidence of secured creditors and lenders sufficiently to continue the Debtor's operations.

The loyalty of Mr. Walsh to the Debtor's rehabilitation is substantially called into question by his many competing business interests and the potential for inter-company dealing which favors those he owns outright. Walsh owns a one-third interest in the Debtor corporation, two-thirds interest in Tri-Mountain Construction Corporation and full interest in W. Va. Crane Service, Inc. All these companies are engaged in the use of heavy equipment in the same geographical areas as the Debtor. They have a record of inter-company transactions involving the extension of credit and transfer of assets which have spawned charges of dishonest dealing. Mr. Walsh also owns one-half interest in Bay Corporation located in the Boston area which has two wholly owned subsidiaries known as Baker & Company and Hot Top Pavements. Mr. Walsh's brother owns Warren Corporation and Walsh & Company, which have been purchasers of equipment owned at one time by the Debtor. Finally, Lusal Corporation is identified as another Walsh enterprise formed to contract with Jefferson Coal Trust and pursue mining in Boone County, West Virginia, which Concord Coal, the Debtor, may well have been able to profitably handle.

While the brief time allowed for trial on the merits in this proceeding did not permit development of details of transfers by the Debtor to related Walsh enterprises, the facts produced at trial understandably generate distrust and controversy. In fact, the transfers in evidence require further scrutiny to assure that none of them should be avoided in the Debtor's best interests. Such a course could not reasonably be expected with Mr. Walsh in charge. His

transfer of several pieces of heavy equipment to his brother's company may have been prudent business judgment and even for fair consideration in their initial divestiture from the Debtor, but further examination of the matter is merited. Diversion of Debtor equipment to Tri-Mountain Construction Corporation and the purported admission by Walsh that he improperly converted its funds prior to filing a voluntary chapter 11 petition for that corporation intensify challenges of Walsh's intentions as to the Debtor, Concord. The sale of Debtor equipment which generated a $20,000.00 profit for W. Va. Crane service further clouds the picture of fair dealing among related companies.

Under these circumstances, it is highly improbable that the Debtor can gain and maintain the confidence of secured creditors and lenders in sufficient measure to support rehabilitation. At the same time, Mr. Smith, as a one-third stockholder, is powerless to change management as Walsh is entitled to elect one-half of the Debtor's board of directors, not the one-third which his own stock interest represents. The two holders of the remaining one-third remain content, though not noticeably enthusiastic, with the Walsh management. The increased scrutiny and resulting costs which Mr. Walsh's acts will cause can scarcely be endured by the Debtor in either time or money. Mr. Walsh is currently facing litigation in other courts as a result of his dealings with Messrs. Halleran and Smith. The diversion of attention to these matters does not enhance the ability of Mr. Walsh to manage this troubled Debtor.

The Debtor faces major rehabilitation problems. Though it apparently has available a good quality of coal and good expertise at its extraction, the vagary of the market and the prospect of a coal strike loom as large obstacles to be overcome. With the business requiring an injection of funds this week to pay current operating debts and with substantial repairs to its equipment being needed in order to achieve profitable operation, borrowing appears mandatory. The Creditors' Committee reports candidly and unequivocally that with the current management it sees no prospects of such funds being forthcoming. The association of Mr. Walsh with Tri-Mountain Construction Corporation, which is a debtor in bankruptcy, with Wales company a defunct business and with charges by Mr. McClung that Walsh suggested altering prior sworn testimony in this Court, Mr. Walsh is not likely to generate the confidence in the credit-worthiness of the Debtor which it will need to survive. A trustee should be appointed and operations continued in accordance with § 1108 of the Code. *In re La Sherene, Inc.*, 3 B.R. 169, 6 B.C.D. 153 (Bkrtcy., N.D.Ga.1980). The urgency for new confidence in management of the Debtor precludes the appointment of an examiner as suggested by the Debtor. The instant case is more akin to *La Sherene, Id.*, than to the facts of *In re 1243 20th Street*, 6 B.R. 683, 6 B.C.D. 1190 (Bkrtcy., D.C.1980) cited by the Debtor. There is no time for an examination of the Debtor's past independent of new initiatives free of all taint from that past.

The trustee will likely continue, for the short term at least, employment of the operational personnel who apparently are experienced and competent at the mining of coal. The role for Mr. Walsh and other management personnel will be at the discretion of the trustee. The Court sees neither need nor justification for a liquidation of the Debtor as it appears to have rehabilitative prospects under different management. The trustee is expected to work toward that end and toward such a plan and restructuring of the Debtor as to make the necessity for a trustee one of short duration.

The Court will immediately consider the qualifications of an appropriate trustee with the parties.