In re **MORNING TREAT COFFEE COMPANY, INC.,** Debtor.

**FOSTER DEVELOPMENT CORPORATION,** Plaintiff,

v.

**MORNING TREAT COFFEE COMPANY, INC. and Southern Coffee Company, Inc.,** Defendants.

**Bankruptcy No. 84–00842.**
**Adv. No. 85–0188.**

United States Bankruptcy Court, M.D. Louisiana.

June 5, 1987.

Jack P. Harris, Baton Rouge, La., for Morning Treat Coffee Co., Inc. and Southern Coffee Co., Inc.

Gregory D. Frost, Baton Rouge, La., for Foster Development Corp.

### REASONS FOR DECISION

WESLEY W. STEEN, Bankruptcy Judge.

#### I. Jurisdiction of the Court

This is a proceeding arising under Title 11 U.S.C., specifically 11 U.S.C. § 1141.

The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

■ A proceeding to interpret the provisions of a plan of reorganization and to enforce its terms is not specifically defined in 28 U.S.C. § 157(b) as either a core or a noncore matter. However, confirmation of a plan is a core matter under 28 U.S.C. § 157(b)(2)(L); I conclude that the effect of plan confirmation is a core proceeding included in the penumbra of bankruptcy court jurisdiction defined inclusively by 28 U.S.C. § 157(b)(2) to surround the explicit jurisdiction of 28 U.S.C. § 157(b)(2)(L). Pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and may determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

#### II. Facts

The facts are stipulated and the proceeding is submitted on cross-motions for summary judgment. In September, 1984, Morning Treat Coffee Company, Inc. ("Morning Treat") sold to Hill & Brooks Coffee Company ("Hill & Brooks") that portion of Morning Treat's business and assets relating to an "office coffee service"

and institutional contracts. The sale price was $180,000, payable $130,000 in cash and the balance in two promissory notes of $25,000 each.

At the time of the sale, Foster Development Corporation ("Foster Development") was a creditor of Morning Treat; in October, 1984, Foster filed an action in state court against Morning Treat and against Hill & Brooks seeking payment to Morning Treat's creditors of the purchase price of the assets sold to Hill & Brooks on the grounds that the sale was not transacted in compliance with the Bulk Sales Law.[1] It is stipulated that the Bulk Sales Law applied to the transaction and that the requirements of the Bulk Sales Law were not satisfied.

On November 1, 1984, Morning Treat filed a petition for relief under Chapter 11 of the Bankruptcy Code and Morning Treat's plan of reorganization was confirmed on August 13, 1985. Under the authority of the plan of reorganization all of the assets of Morning Treat were transferred to Southern Coffee Company, Inc. ("Southern Coffee"). Southern Coffee is a corporation formed for the purpose of acquiring the assets of the Debtor.

Now, after confirmation of the plan and after transfer of the Debtor's assets to Southern Coffee, Foster Development seeks in this proceeding to continue its Bulk Sales Law suit against Hill & Brooks. Southern Coffee seeks authority to be substituted as the party plaintiff in that action and seeks an injunction against Foster Development to prohibit Foster Development from asserting those claims in its own behalf.

### III. The Contentions of the Parties

Southern Coffee contends that after the bankruptcy petition was filed the right under the Bulk Sales Law to collect from Hill & Brooks the fair market value of the property transferred by the Debtor was exercisable exclusively by a trustee in the bankruptcy case, and when no trustee was appointed the right was exercisable by the debtor-in-possession.[2] Southern Coffee also contends that these rights were transferred to Southern Coffee by virtue of the liquidating plan of reorganization under which Southern Coffee acquired all of the assets of the debtor-in-possession.

Foster Development, on the other hand, contends that the right of creditors under the Bulk Sales Law never belonged to the debtor-in-possession and that therefore the right could not transfer to Southern Coffee by virtue of the plan of reorganization.

I think that the contentions of both parties are correct, in part.

### IV. The More Interesting Alternative Basis for the Decision

The Debtor contends that its plan of reorganization provides for the transfer to Southern Coffee of all rights that could have been exercised by the debtor-in-possession during the pendency of the Chapter 11 case. Before looking at the plan document, I first question whether a plan of reorganization can effect such a transfer. Can a trustee assign powers that belong to him in his capacity as trustee? At least one court, in a well-researched and well-reasoned opinion holds that it may not.[3]

Section 1123 of the Bankruptcy Code provides some guidance but no explicit rule. Section 1123(a)(5) and (b)(4) provide that a plan of reorganization must provide adequate means for the plan's implementation, including retention by the Debtor of all or part of the property of the estate, transfer of property of the estate to another entity, or sale or transfer of property of the estate. These provisions refer to "property of the estate."

Section 541 of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests of the debtor in property as of the commencement of the case. It is clear that the Louisiana Bulk Sales Law vests the right of recovery in creditors and not in the

1. La.R.S. 9:2961 et seq.

2. The Debtor cites 11 U.S.C. §§ 544, 1104, and 1107.

3. In re Sweetwater, 55 B.R. 724 (D.C., D.Utah, 1985).

transferor of the property in question.[4] Section 541 of the Bankruptcy Code also provides that "property of the estate" includes any interest in property that the trustee recovers under § 550 of the Bankruptcy Code. Under § 550, the trustee may recover property under § 544 of the Code; as indicated below, I conclude that a trustee in a Chapter 11 case may exercise the rights of creditors under the Bulk Sales Law by virtue of § 544(b) of the Bankruptcy Code. However, § 541 of the Bankruptcy Code does not include in "property of the estate" the trustee's power to act under § 544 but only includes the property that is actually recovered by the trustee.[5]

■ Since I conclude that the right to avoid a transfer under § 544(b) (as distinguished from the property recovered upon exercise of that power) is not property of the estate, I conclude that there is no authority in 11 U.S.C. § 1123(a)(5) or (b)(4) to sell that right.

If Bankruptcy Code § 1123(b)(3) applies, it provides that a plan may provide for the *retention* and enforcement of any claim or interest belonging to the debtor or to the estate; that provision also states that the plan may provide for the *retention* and enforcement of such a claim by a representative of the estate appointed for such purpose. It does *not* provide for the *sale* of such a right.

■ There are several reasons why § 1123(b)(3) might not apply. First, the

definition of "claim" under § 101(4) of the Bankruptcy Code arguably does not include the trustee's power to avoid the transfer of an interest since the term "claim" refers to a right to payment. An avoidance power is not a right to payment but rather is an extraordinary remedy to invalidate erstwhile effective legal transactions as a result of the collective execution process of bankruptcy. In addition, § 1123(b)(3) arguably does not apply to a § 544(b) avoidance action because the action does not belong to the estate but rather is a right of creditors exercisable by the trustee/debtor-in-possession by virtue of § 544(b). In policy terms, the analysis is this: § 544(b) allows a trustee to exercise the powers of a third party creditor to recover assets for the benefit of the estate; this power is not an asset of the estate at the time of the filing of the bankruptcy case but rather is an exercise by the trustee of a creditor's right on behalf of all creditors to achieve a distribution of assets perceived by Congress to be more equitable to all creditors and to avoid advantages to some creditors that were perceived by Congress as inequitable.[6] Southern Coffee has cited no authority for the right to sell this right exercisable in a fiduciary capacity.

If § 1123(a)(5), § 1123(b)(4), and § 1123(b)(3) do not apply, it does not appear that there is any law directly applicable. The most analogous provision would be § 1123(b)(3) which permits retention, but not transfer, of the action.

---

**4.** "The transfer in bulk ... shall be void as against the creditors of the transferor ..." La. R.S. 9:2961(A). "[The transferee] ... shall at the suit of any creditor, be held liable to all the creditors of the transferor ..." La.R.S. 9:2963.

**5.** *In re Mortgage America,* 714 F.2d 1266 (5th Cir., 1983) and *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142 (5th Cir., 1987) do not conclude differently but rather support this conclusion. In both of those cases the 5th Circuit held that an action to pierce the corporate veil was, under Texas law, an action *belonging to the debtors* and not merely to their creditors. In the former case (as interpreted by the latter), the 5th Circuit concluded that an action belonging exclusively to creditors (the Texas Fraudulent Transfer Act cause of action) was not property of the estate even though it was exercisable by the Debtor on behalf of the creditors. In this

respect, the Bulk Sales Law claim is like the Texas Fraudulent Transfer action. Since "... this cause of action was assertable only by a creditor ... this claim therefore could not be treated like the other two actions ..." which were stayed because they were property of the estate. The opinion then concludes that the action was nevertheless stayed because the funds that the creditor would reach were impressed with equitable interests in favor of the debtor.

**6.** *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142 (5th Cir., 1987) states the policy argument in Part III(B); The bankruptcy process substitutes collective creditor conduct and debtor control of a reorganization process for unilateral creditor action. In asserting a § 544(b) claim, the trustee/debtor-in-possession acts as representative for these creditors.

It is also possible that § 1123 does not contemplate either the retention or the transmission of powers under § 544 of the Code. While that conclusion is far from clear, it might well be the legislative intent that such actions terminate as the result of the confirmation of a plan of reorganization. That concept is supported, at least in part, by the sections of the Code that grant authority to a trustee and debtor-in-possession to exercise rights under § 544. Bankruptcy Code § 1107 provides that a debtor-in-possession, "subject ... to such limitations or conditions as the court prescribes ... shall have all of the rights ... and powers ... of a trustee ..." The powers, rights, and duties of a trustee are described in § 1106. The only duties specified for a trustee after confirmation of a plan are to "file such reports as are necessary or as the court orders." If after confirmation a trustee's only duty and authority (absent a permissible plan provision extending those duties) is to file reports, then the debtor-in-possession's power can extend no further. In addition, § 1101 of the Bankruptcy Code defines "debtor-in-possession" to mean "debtor"; § 101(12) of the Bankruptcy Code defines the word "debtor" to mean the entity concerning which the case has been commenced. There is no authority in the Code for anyone besides the debtor to act as a debtor-in-possession with the powers of a trustee. There is no authority in the Code for the transfer of powers authorized to a trustee and thus to a debtor-in-possession.

In summary, one potential conclusion from the language in § 1106 specifying a trustee's post-confirmation duties as the filing of reports would be that the power and duty to bring avoidance actions terminate at plan confirmation; since the debtor-in-possession's powers are defined in terms of those of the trustee, the debtor-in-possession would have no further powers than would the trustee, and thus the debtor-in-possession would have no post-confirmation avoidance powers to exercise or to transfer. However, § 1123 appears to contemplate that certain claims can be reserved to

be litigated by the debtor or by a representative of the debtor; while the codal definition of "claims" might make this provision inapplicable to avoidance powers, it would seem that a fair reading of §§ 101, 1101, 1106, 1107, and 1123 of the Bankruptcy Code is that the trustee and debtor-in-possession may exercise the powers of a trustee under § 544 if such actions are retained by express and explicit plan provision. But there does not appear to be any authority to transfer this power to a new entity since § 1123 provides that the plan may allow for the retention of claims and the exercise of those claims on behalf of the estate but does not provide for the transfer of any asset other than property of the estate, and, as noted, assets recovered by virtue of § 544 become property of the estate but that the power of § 544 itself is not property of the estate.

■ The question posed by the parties is whether the plan has transferred to a new entity avoidance powers of the debtor-in-possession and trustee under the Bankruptcy Code; this analysis indicates that such a transfer is not permitted by the Code. But this is not the only analysis under which to reach the conclusion that Southern Coffee has no rights to such power in this the case.

## V. The Alternative Basis for the Decision: Interpretation of the Plan of Reorganization

The plan is not completely clear regarding the treatment of this right to bring suit under the Bulk Sales Law. The plan contains the following provisions:

1. "The debtor will liquidate all of *its assets* by transfer of *its assets* to another corporate entity organized before the confirmation of the plan (hereinafter referred to as the Company). The transfer of the assets of the debtor to the Company will be in accordance 11 U.S.C. Section 1123(a)(5)(B) ... (D) ... and 1123(b)(4)."[7] [Emphasis supplied.]

---

**7.** Even though the plan refers to the newly formed corporation as "the Company", else-

where the plan uses "the Company" to refer to

2. "The following provision provides for the orderly liquidation or reorganization of the debtor or the Company ... whenever the term 'debtor' is used, it also refers to 'Company'." [8]

3. "The means of implementation of this plan shall be in accordance with 11 U.S.C. Section 1123(a)(5)(B) by virtue of a transfer of all of the *property of the estate*, excluding preference actions, to the Company." [Emphasis supplied.]

4. "Until all obligations of the debtor are completed hereunder, the Court shall retain jurisdiction ... [to] allow the debtor to enforce after confirmation any claims or causes of action which exist in the debtor's favor as debtor-in-possession (which are the same as trustee in bankruptcy) and which may not have been previously enforced by the debtor.... [to] allow the debtor the rights and powers as debtor-in-possession (which includes the rights and powers of a trustee under Bankruptcy (sic) Code existing in favor of a debtor-in-possession before the appointment of a trustee and before confirmation), to enforce cuases (sic) of action which previously may not have been enforced or prosecuted by the debtor as debtor-in-possession, and [to] allow the debtor to reserve all those rights and powers held by him as debtor-in-possession before appointment of a trustee and before confirmation.... All remaining claims, causes of action, rights,

interests and other equitable interests in property including litigious and/or other rights on behalf of the debtor, excluding all preference actions, are included in the transfer of assets to the Company."

The plan contains obvious allusions to the transfer of § 544(b) powers to Southern Coffee since it refers to the transfer of all of the Debtor's rights to that company; however, this is merely an *inference*, since there is no explicit statement that a § 544(b) right is transferred.[9] On the other hand, there is the explicit reference in paragraph 4 above to the Debtor's retaining the right to enforce all causes of action that it had as debtor-in-possession and trustee. That language would lead any reasonable reader to conclude that § 544(b) rights are retained.[10]

■ Assuming, for the purpose of plan interpretation, that the Debtor could retain a § 544(b) right or could transfer that right, the plan simply does not make it clear that such a right is transferred to Southern Coffee. Since the principal authority for the transfer of such a right is the ambiguous statement that the Debtor transfers all litigious rights and causes of action to Southern Coffee, since the inclusion of a § 544(b) right within the concept of claims and litigious rights is a substantial expansion of the concept of "claim" as defined by the Bankruptcy Code, since the more explicit reference to debtor-in-possession powers is the provision that such powers are retained by the Debtor, I conclude that the most appropriate interpretation of

the Debtor. As noted below, this causes some confusion.

**8.** This sentence appears to be nonsense. The plan does not provide for the liquidation or reorganization of Southern Coffee: "the Company." However, this boilerplate can be interpreted as attempting to give Southern Coffee the rights of a debtor-in-possession in the bankruptcy case. But if that is the case, then the language in paragraph 4 cited below does not make sense; if "Company" is always substituted for "debtor", the paragraph would, among other things, call for a transfer of assets from the Company to the Company; *e.g.* "All remaining claims, causes of action, rights, interests and other equitable interests in property including

litigious and/or other rights on behalf of [*the Company*], excluding all preference actions, are included in the transfer of assets to *the Company*" By such boilerplated, wordprocessing legerdemain the plan would attain an "Alice in Wonderland" status where "debtor" and "Company" mean only (and exactly) what the proponent says they mean.

**9.** By contrast, note that there is an explicit reference to the reservation of preference causes of action. There is no such explicit statement either way with respect to § 544(b) rights.

**10.** Unless, of course, the "debtor" equals "Southern Coffee" magic discussed in footnote 8 is accepted.

the plan is that such powers, to the extent that they could be reserved, were reserved and were not transferred to Southern Coffee. Therefore, Southern Coffee will be enjoined from seeking to substitute itself as party plaintiff in any such Bulk Sales action.

## VI. Permission for Foster Development to Pursue the Bulk Sales Action

The Bulk Sales Law claim, in the context of the case in question, was a substantial power exercisable by the debtor-in-possession. It was not referenced in the disclosure statement and there is no explicit provision for the enforcement of the right post-confirmation, with the exception of the boiler-plate reference to the retention of all rights by the Debtor. The disclosure statement and the plan *did* explicitly provide for the transfer of the two $25,000 notes to Southern Coffee. Allowing Foster Development now to bring and to prosecute its Bulk Sales Law claim would defeat the plan of reorganization by creating a defense to payment of the notes transferred under the plan, making a mockery of the bankruptcy proceeding and rendering ineffective the Bankruptcy Code with respect to this Debtor and its other creditors who will be paid under the plan.

The Hill & Brooks notes were consideration for Southern Coffee's obligation to make payments under the plan. If Foster Development is successful, presumably Hill & Brooks will not pay the notes to Southern Coffee. The plan of reorganization will have been defeated. Therefore, the Foster Development's Bulk Sales Law claim is a direct action against consummation of the plan in the same way that a Texas Fraudulent Transfer action was a proceeding against property of the estate in *Mortgage America* as explained in *Matter of S.I. Acquisition, Inc.* Since the Bankruptcy Code (§ 362) automatically stays the fraudulent conveyance action, and since the 5th Circuit in that decision recognizes in the bankruptcy judge a broad discretionary statutory (11 U.S.C. § 105) authority and inherent equitable authority to stay third

parties after the "balancing of relevant interests" and maintaining "an even balance between the parties' concerns and rights",[11] I conclude after considering these interests that Foster Development should not be permitted to destroy the confirmed plan of reorganization.

The time to raise the issue of the Bulk Sales Law claim, which I conclude did indeed belong to the debtor-in-possession and to the trustee, was prior to plan confirmation or at the confirmation hearing, not four months after confirmation of the plan of reorganization. Therefore, while I conclude that the debtor-in-possession at one time enjoyed the right to bring a § 544(b) action, and while I conclude that it might be possible for the Debtor to retain that right and to provide for its enforcement by a representative of the estate subsequent to plan confirmation, I conclude that such enforcement ought to be prohibited by the Court when the plan contains no explicit provision with reference to it and when the creditor who proposes to to prosecute the right was actively involved in the Debtor's reorganization case, was fully informed with respect to the plan and confirmation process, and did not raise the issue until several months after plan confirmation.

Accordingly, Foster Development will be enjoined from further action in pursuit of the Bulk Sales Law claim.

## VII. Order

A separate order has been entered this date.

---

11. *Matter of S.I. Acquisition, id.,* footnote 3.