**In re JUSTUS HOSPITALITY PROPERTIES, LTD., Debtor.**

**In re JUSTUS HOTEL CORPORATION, Debtor.**

**Bankruptcy Nos. 87–2211–BKC–6P7, 87–2212–BKC–6P7.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

April 26, 1988.

Robert Young, Orlando, Fla., for debtors.

David R. McFarlin, Orlando, Fla., for Frank Buonauro, Jr.

Don A. Lynn, Miami, Fla., for Great Western.

Stanley Talesnick, Indianapolis, Ind., for Merchants Nat. Bank.

Jules S. Cohen, Terry McCollough, Orlando, Fla., for Ambassador Sav. & Loan.

Lynne England, Tampa, Fla., Asst. U.S. trustee.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon Frank A. Buonauro's ("Buonauro") motion to dismiss, motion for abstention, and motion to appoint a Chapter 11 trustee. An evidentiary hearing on the motions was held November 25, 1987, at the conclusion of which the Court offered all interested parties the opportunity to submit written memoranda of law in support of their positions.

Buonauro, Great Western Bank and Great Western Credit Corporation filed memoranda in support of the motions while the Debtors, Merchant's National Bank & Trust Co. of Indianapolis and Ambassador Savings & Loan Association filed briefs in opposition. Upon the arguments and evidence so presented, the Court does not find that abstention, dismissal, or the appointment of a Chapter 11 trustee are warranted.

### FACTS

Debtor Justus Hospitality Properties, Ltd. is the owner of a 300 room hotel and aquatic center located in Orlando, Florida, in the midst of the competitive hotel and motel environment which surrounds Walt Disney World. The aquatic center contains competition swimming and diving pools, a health club facility, and areas for both gymnastics and racquetball. The health club has approximately 800 members, and the aquatic center is used on a daily basis

by children, students, and adults in both individual and organized athletic programs.

The idea for a combination hotel and aquatic center was conceived by Walter G. Justus ("Justus") and Frank A. Buonauro. Together, these two individuals formed a corporation named Justus Hotel Corporation which, until February 26, 1986, was solely owned by Justus and Buonauro. Justus owned 65% of the stock while Buonauro owned 35%. Justus Hotel Corporation was in turn the general partner of Justus Hospitality Properties, Ltd., a limited partnership formed to develop the complex.

According to the evidence presented at trial, Justus Hotel Corporation owned a 2% interest in the limited partnership as general partner, Buonauro owned a 34% interest as a limited partner, and G. Associates, a Justus controlled entity, owned the remaining interests as a limited partner. Such was the relationship between the parties until February 26, 1986.

Merchants National Bank & Trust of Indianapolis ("MNB") is a secured creditor of both entities and holds a second mortgage on the hotel complex. Justus and Buonauro were personal guarantors of that indebtedness and provided additional collateral to secure the loan. Specifically, Justus assigned a land contract to MNB as collateral for his guarantee while Buonauro pledged his shareholder interests in Justus Hotel Corporation as collateral for the loan.

In March of 1986, Walter G. Justus declared personal bankruptcy. Prior to filing his petition, he surrendered certain assets pledged to MNB in lieu of foreclosure. Among the assets surrendered were his interests in the limited partnership, his interest in the land contract and an assignment of his stock in Justus Hotel Corporation.

MNB took title to the stock in the name of Merchants National of Indiana ("MNI"), a wholly-owned Florida subsidiary of MNB, and Richard A. Cantin, Senior Executive Vice President of the Bank, was named Chairman and Director of MNI. MNB, through its subsidiary, MNI, then assumed a proprietorial and controlling role in the operation of Justus Hotel Corporation. At that time, it had a 65% ownership interest in Justus Hotel Corporation and a 64% interest in Justus Hospitality Properties, Ltd.

The new ownership did not prevent the complex from continuing to lose money. MNB was required to contribute additional funds to the operations to protect its position and various other creditors began placing the complex on a C.O.D. basis and demanding payment on delinquent accounts. On or about July 15, 1987, MNB called upon Buonauro's personal guaranty. Buonauro was unable to pay and the bank foreclosed upon his stock. The stock was purchased by yet another wholly owned subsidiary of MNB, Anon II.

Nonetheless, Buonauro continued to manage the complex under the terms of a Hotel Management Agreement (Debtor's Exhibit 1). This agreement was unaffected by Buonauro's removal as a shareholder and later as a director.

On September 2, 1987, MNI and Anon II resolved to place both Justus Hotel Corporation and Justus Hospitality Properties, Ltd. into Chapter 7 bankruptcy. Petitions were filed and Chapter 7 trustees were appointed. Without Court authorization, the Chapter 7 trustees continued to operate the business for some three weeks, at which time the Board of Directors of the debtor corporations resolved to convert the cases to Chapter 11.

Once converted, the debtors moved to reject the hotel management agreement with Buonauro pursuant to 11 U.S.C. § 365. On January 4, 1987, this Court entered an order approving the rejection and, subsequently, the debtors entered into a hotel management agreement with Radisson Hotel Corporation. A motion for approval of that agreement is currently pending.

Prior to the bankruptcy case being filed, Buonauro filed suit in state court against MNB alleging fraud, constructive fraud, breach of fiduciary duty, lender malpractice and recision of Buonauro's guaranty. His principal grievance is that he was improperly removed as a director of Justus

Hotel Corporation. This argument extends to this case for if he was improperly removed as a shareholder/director of the debtor corporations, the debtors did not have the right to file the bankruptcy petitions.

## DISCUSSION

In connection with his continuing dispute with MNB, Buonauro has argued that this case ought to be dismissed as a bad faith filing. In support of his argument, Buonauro cites *In re SarManco*, 70 B.R. 132 (Bkrptcy.M.D.Fla.1986), a case in which this Court, following the lead of the Eleventh Circuit, held that good faith is a prerequisite of any Chapter 11 filing. This Court held that the lack of good faith was dispositive and noted that a petition must be filed "with the honest intent and genuine desire to utilize the provision of Chapter 11 for its intended purpose—to effectuate a corporate reorganization—and not merely as a device to serve some sinister and unworthy purpose of the petitioner." *Id.* at 138.

■ Buonauro has argued that the manner in which MNB took control over the debtors and removed him from management amounts to such an egregious act of bad faith and dishonesty that these cases ought to be dismissed. The Court does not agree.

First, it appears that MNB properly exercised its rights under the collateral assignments and personal guarantees to gain control of the debtor entities. There is little or no evidence that this was accomplished through improper or sinister conduct. Instead, it appears that MNB acted merely to protect its own interests as a secured creditor.

Secondly, the evidence clearly shows that although Buonauro had been a member of the Board in the past, he had not been elected to the new Board chosen after his stock was sold at foreclosure. The Court finds further that Buonauro was not a director on September 2, 1987, the date the Board met to consider filing the petition. Since the Board was duly elected by the shareholders, it was authorized to file the petition on behalf of the corporation and as sole general partner of the limited partnership.

This case is unlike the majority of bad faith dismissals involving single assets, no income, few creditors, and filing on the eve of foreclosure or those cases filed to defeat or delay the entry of a judgment in a pending lawsuit. An example of those type of cases would be *In re Albany Partners*, 749 F.2d 670 (11th Cir.1984). There, a limited partnership, claiming that it held title to a motel, filed a bankruptcy petition on the eve of foreclosure. The court found that the case was essentially a two-party dispute and that the petition was filed merely to frustrate the interests of a secured creditor. Accordingly, the case was dismissed.

Soon afterwards, the Eleventh Circuit had before it another case involving bad faith, namely *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987). There, the court set forth several factors which a court may consider in determining whether a petition for reorganization has been filed in bad faith. Those factors are as follows:

(a) The lack of a realistic possibility of an effective reorganization;

(b) Evidence that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;

(c) Whether the debtor is seeking to use the bankruptcy provisions to create and organize a new business, not to reorganize or rehabilitate an existing enterprise or to preserve going concern values of a viable or existing business;

(d) The timing of the debtor's relevant actions;

(e) Whether the debtor appears to be merely a "shell corporation"; and

(f) Whether the debtor was created, or the subject property transferred to the debtor, for the sole purpose of obtaining protection under the automatic stay of Chapter 11 by filing bankruptcy.

825 F.2d 298 (citations omitted).

■ Reviewing each of the above factors, the Court concludes that none are

present here. First, the debtor owns and operates a hotel complex which is well constructed and furnished and is generating revenues from both the hotel and the aquatic center facilities. The hotel is an ongoing business, fully staffed and operational. On a daily basis, hotel guests, children, high school students, and adults use the facilities for both individual and organized use.

Furthermore, the debtors' schedules indicate that numerous secured and unsecured creditors exist whose claims total approximately $25 million dollars. This is much more than a mere two-party dispute or an effort to forestall foreclosure. Here we have debtors in serious need of this Court's protection to enable them to preserve their going concern value. If this protection were not available, the debtors' assets would be dismantled by foreclosure suits, unsecured creditor's suits, cancellation of its franchise agreement, etc. There would be little left for the benefit of creditors.

■ Section 1112(b) of the Bankruptcy code provides, in relevant part, that:

(b) ... on request of a party in interest ... and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

The existence of one or more of the grounds set forth above does not compel conversion or dismissal. The bankruptcy court, in its sound discretion, must make the ultimate decision. *In re L.S. Good & Co.*, 8 B.R. 315, 3 C.B.C.2d 785 (Bkrptcy.N.D.W.Va.1980).

■ In the instant case, Buonauro has failed to present any evidence of continuing loss to the estate. To the contrary, the evidence establishes that the debtors were operating the hotel and aquatic complex in a manner to pay all current operating expenses. The debtors have also taken steps to preserve the value of the complex by improving the facilities and its operations by increasing the room rates, repairing the computer, advertising and marketing the facility, conducting various national and international swimming events at the aquatic center, and successfully bidding for future events.

James P. McCallister, President of the debtor corporation, further testified that even though it was early in the Chapter 11 proceeding, the debtor's present intent was to establish good operating data for the hotel complex and to preserve its going concern value for future sale. McCallister also testified that various parties had expressed an interest in buying the property, indicating the likelihood that a plan of reorganization involving an orderly sale of the property could be consummated.

The Court agrees with that analysis and finds that the value of the hotel is greater as an ongoing business than as a closed facility. Current estimates place the value of the business as an ongoing concern in the $27—$30 million dollar range, a price which exceeds current debt obligations. If the hotel were closed even for a brief period, it would lose current and future bookings, employees, and the good-will it has established. The hotel would at the same time, however, continue to incur expenses, primarily in the form of insurance and security costs, without receiving any revenue.

It should also be noted that § 1112(b) requires consideration of what is in the best interest of the creditors and the estate. Again, there has been no showing that either the creditors or the estate would be better served if the cases were dismissed. To the contrary, it appears that dismissal would only result in benefits to a few creditors and a substantial diminution in the value of the debtors' assets. If such a course were taken, it is unlikely that the unsecured creditors would recover anything.

■ Buonauro has also argued that the debtors' delay in preparing schedules and

their failure to file disclosure statements and plans of reorganization constitute unreasonable, prejudicial delay sufficient to warrant dismissal. However, as noted in *In re Powell Brothers Ice Co.*, 37 B.R. 104, 106, 10 C.B.C.2d 328, 330 (Bkrptcy.D.Kan. 1984), a debtor should be permitted a reasonable time to reorganize, and the reasonableness of the time period should be determined on a case-by-case basis.

■ Any delay was reasonable, minimal and explainable considering the fact that former management may have been responsible for the missing and inadequate business records. The Court finds further that the debtors should have a reasonable time, consistent with legal time periods, in which to prepare their disclosure statements and plans of reorganization. Since the case has only been pending for a short period, the Court cannot yet conclude that the delay is unreasonable.

■ In conjunction with his motion to dismiss, Buonauro has also filed a motion for abstention pursuant to 11 U.S.C. § 305. That section provides:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

Buonauro contends that the ongoing dispute between himself and MNB is sufficient cause for abstention. In support of this argument, he cites *In re Beacon Reef Ltd. Partnership*, 43 B.R. 644, 11 C.B.C.2d 1283 (Bkrptcy.S.D.Fla.1984), wherein the court held that a dispute primarily between the two general partners and the sole limited partner was sufficient ground for abstention.

Buonauro argues that this case is similar to *In re Beacon Reef* in that the dispute essentially lies between stockholders in the general partner and in the limited partnership. Furthermore, he maintains that the resolution of this controversy is best left to the non-bankruptcy forums.

While the Court agrees that it should not get deeply involved with the controversy surrounding the removal of Buonauro as a shareholder/director, he has presented insufficient evidence for this court to abstain from proceeding with these cases. Specifically, movant has failed to present any evidence that abstention would benefit the creditors and the debtors. To the contrary, if the Court were to abstain or dismiss this case, there would be a "race to the courthouse" and a subsequent dismantling of the operations to the detriment of all parties.

■ Finally, Buonauro claims that a Chapter 11 trustee ought to be appointed pursuant to 11 U.S.C. § 1104(a)(2) due to alleged conflicts of interests between present management, the debtors, general creditors, and equity security holders. In particular, Buonauro points out that MNB, through its wholly-owned subsidiaries, dominates and controls the debtors while at the same time claiming to be a major creditor.

Section 1104(a)(2) provides:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, ...; or

(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate....

Buonauro argues that the requirements of § 1104(a)(2) are met where, as in this case, the loyalty of present management is put into question by many competing business interests and the potential for intercompany dealings favoring those companies owned by present management. *See In re Concord Coal Corporation*, 11 B.R. 552, 4 C.B.C.2d 944 (Bkrptcy.S.D.W.Va. 1981); However, Buonauro has not met his

burden of providing sufficient evidence which would justify such a conclusion.

Under current bankruptcy law, there is a strong presumption in favor of leaving a reorganizing debtor-in-possession in charge of its operations. Usually, it requires a showing of fraud, dishonesty, or serious error on the part of management before this presumption will be overcome. *See In re Philadelphia Athletic Club, Inc.*, 15 B.R. 60, 5 C.B.C.2d 458 (Bkrptcy.E.D.Pa. 1981); *In re Antilles Yachting, Inc.*, 4 B.R. 470, 2 C.B.C.2d 398 (Bkrptcy.V.I.1980).

In this case, the record is devoid of any such facts which would justify the appointment of a Chapter 11 trustee. Should that situation change, however, the creditors or other interested parties are free to bring an appropriate motion to correct the wrongdoing. Until that time comes, the motion for appointment of a trustee is premature.

Buonauro's argument that current management lacks the experience to operate a business of this type is without merit as the testimony indicates that Radisson Hotel Corporation has extensive knowledge and expertise in the area of hotel management.

In summary, the movant has failed to demonstrate that this Court ought to dismiss this case or abstain from further hearing until a resolution of the management dispute can be accomplished. The Court finds further that the appointment of a trustee is not yet appropriate. Accordingly, the Court will enter a separate order denying all three motions.