**In re GPA TECHNICAL CONSULTANTS, INC., Debtor.**

**U.S. TRUSTEE, Movant,**

**v.**

**GPA TECHNICAL CONSULTANTS, INC., Debtor.**

**Bankruptcy No. 1–89–00788.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 20, 1989.

Thomas R. Noland, Dayton, Ohio, for debtor.

R. Edward Tepe, Cincinnati, Ohio, for North Side Bank & Trust.

Charles Caldwell, Cincinnati, Ohio, Asst. U.S. Trustee.

## DECISION AND ORDER

BURTON PERLMAN, Chief Judge.

The issue before the court is whether the Chapter 11 case of GPA Technical Consultants, Inc., debtor-in-possession, should be converted or dismissed under 11 U.S.C. Section 1112(b)(1). This court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1334(b) and the General Order of Reference entered in this district. This is a core proceeding arising under 28 U.S.C. Section 157(b)(2)(A). The court finds that the movant, the United States Trustee for the Southern District of Ohio, has not shown the requisite cause for conversion or dismissal. Therefore, the motion to convert or dismiss is denied.

Debtor-in-possession's business is, or was, technical engineering consulting services. The debtor commenced this Chapter 11 case by filing a voluntary petition on March 1, 1989. On July 28, 1989, the debtor-in-possession filed a so-called "liquidating" plan and disclosure statement, stating in the plan that it had "ceased any remaining business operations in April, 1989, and now seeks to orderly liquidate its assets." The United States Trustee (Movant) filed a Motion for Order Dismissing or Converting the Chapter 11 case and a memorandum of

law in support thereof on August 8, 1989. Movant argued that because of continuing losses to the estate and an absence of a reasonable likelihood of rehabilitation of the debtor-in-possession, the Chapter 11 case should be dismissed or converted to a Chapter 7 case. The debtor-in-possession timely filed a response and memorandum of law responding to the above. Additionally, North Side Bank and Trust Company (Northside), a secured creditor of the debtor, timely filed a memorandum in opposition to the motion.

11 U.S.C. Section 1112(b), enables the court "on request of a party in interest or the United States trustee", and after notice and hearing to convert a Chapter 11 case to Chapter 7, or dismiss it, whichever is in the "best interest of creditors and the estate", "for cause", including: .

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

It is upon this statutory provision that Movant here relies.

■ 1. Cause. a). Contentions of the Parties. Movant bears the burden of proof in its motion to dismiss or convert this Chapter 11 case. *Matter of Denrose Diamond*, 49 B.R. 754, 756 (Bankr.S.D.N.Y.1985). Movant alleges that "cause" is to be found in that (1) the estate has lost money since the filing of the petition, (2) there is no ongoing business to rehabilitate, (3) almost all of the assets of the debtor appear to be subject to Northside's security interest, and, if so, the only creditors to receive any distributions will be this creditor and counsel for the debtor. Movant states that upon a conversion a Chapter 7 trustee would determine whether Northside's security interest is valid, and if appropriate, abandon those assets to the secured creditor without added expense to the estate. Additionally, movant states that a Chapter 7 trustee is better suited than the debtor-in-possession to collect accounts receivable and prosecute pre-petition transfers.

Debtor-in-possession, on the other hand, contends that Northside is absorbing any losses to the estate. Pursuant to the cash collateral order filed April 12, 1989, North-

side was granted a security interest in almost all, if not all, of the property of the estate and the debtor-in-possession. Additionally, the debtor-in-possession was authorized to use the cash collateral for payroll and other operating expenses. Northside subordinated its position to the claim of debtor-in-possession counsel for fees and expenses. Debtor-in-possession also notes that if there are any losses to the estate, they are due to the liquidating posture of the business and that any losses have been made up for by the asset recoveries to date.

Since the petition was filed, debtor-in-possession has finished work in progress, liquidated assets, collected accounts receivable, and pursued actions to recover pre-petition transfers. Debtor-in-possession estimates that it has realized or will soon realize over $800,000.00 in asset recoveries. The debtor concedes that it is unable to continue in business and that it is highly unlikely that any assets will be available to distribute to general unsecured creditors. However, it contends that debtor has an advantage over a Chapter 7 trustee with respect to access to information necessary to avoid transfers and collect receivables. It has already gathered information that a Chapter 7 trustee would need to replicate. Northside submitted a memorandum in opposition to the movant's motion to dismiss or convert the Chapter 11 case, echoing the debtor-in-possession's response. As an aside, debtor-in-possession states in its disclosure statement that it disputes Northside's security interest in any funds recovered as preferences.

■ (b). Disposition. Continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation is the basis upon which Movant relies in support of its motion. The purpose of the "continuing loss to or diminution of the estate" factor is to prevent the debtor-in-possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation. See, e.g., *In the Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986).

■ In the instant case, there is no diminution of the legal and equitable interests of the debtor that are subject to unsecured creditor and equity holder satisfaction. Assuming that Northside's security interest in virtually all of the assets of the debtor and the proceeds thereof is valid, the unsecured creditors and equity holders will not get anything from the estate whether the business is liquidated in a Chapter 11 or Chapter 7 case or under state law. Northside holds a secured claim that is greater than what can be reasonably expected to be recovered by the debtor; there is no estate as far as the unsecured creditors and equity holders are concerned. To the extent that Northside has an interest in the "estate", it is absorbing any "losses" to the estate because it feels it will recoup a greater dividend by keeping the business afloat to collect receivables and pursue avoidance actions. This expenditure may be more appropriately considered an investment by the secured creditor than a loss to the estate.

Thus, if the court keeps the instant case in Chapter 11, unsecured creditors do not stand to lose anything while the secured creditor stands a chance of gaining at the expense of account debtors and those who received pre-petition transfers. Additional beneficiaries, if the case remains in Chapter 11, are any principals who personally guaranteed debts of the debtor. To the extent that the debtor-in-possession pays those debts, the principals will be off the hook.

If this case were dismissed, the secured creditor could pursue recoveries on its own, but it cannot do so as effectively as the debtor. More specifically, it is not clear that the avoiding powers of a trustee can be conferred upon Northside by abandonment. *In re Morning Treat Coffee Co., Inc.*, 77 B.R. 62 (Bankr.M.D.La.1987) (avoiding powers of debtor-in-possession are not property of the estate and thus cannot be assigned or transferred pursuant to 11 U.S.C. Sections 1123(a)(5)(B) and 1123(b)(4), which provide that a plan may provide for the transfer or sale of all or a portion of the property of the estate). Keeping the present case in Chapter 11

would maximize the return to the secured creditor by keeping present management in place. The Code's presumption that a debtor-in-possession and not a trustee will carry on the business of the debtor contemplates that a debtor-in-possession will have a comparative advantage over a trustee with respect to reorganizing a firm. See 11 U.S.C. Section 1104; H.R.Rep. No. 595, 95th Cong. 1st Sess., at 233 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6192.

Furthermore, the debtor may have a comparative advantage over the trustee in liquidation with respect to collecting accounts receivable and prosecuting preference actions because of the historic involvement of the debtor with its affairs. Additionally, if principals of the debtor have given personal guarantees for the debtor's debts, the economist would expect, assuming all other variables are held constant, that principals would prosecute avoidance actions and liquidate receivables more vigorously than a Chapter 7 trustee. Where a trustee's rate of return on liquidation is fixed at 3% on monies disbursed or turned over to parties-in-interest, 11 U.S.C. Section 326, the principal who is collecting for the debtor has a rate of return approaching 100% to the extent that the amount the firm pays to the secured creditor offsets an equal amount the principal would pay under his personal guarantee. Cf. R. Posner, *Economic Analysis of Law* 63 (3d ed.1986). Thus, allowing this debtor to liquidate in Chapter 11 would maximize the distribution to creditors. *In the Matter of Crosby,* 93 B.R. 798, 800 (Bankr.S.D.Ga.1988) (debtor's continuing efforts to recover accounts receivable a factor in not converting Chapter 11 case). Accordingly, this court holds that the U.S. Trustee has not shown a continuing loss to or diminution of the estate for the purposes of 11 U.S.C. Section 1112(b)(1).

In addition to the above, the U.S. Trustee has failed to show that there is an absence of a reasonable likelihood of rehabilitation for the instant debtor-in-possession.

■ The debtor-in-possession would like to liquidate its business and pursue avoidance actions on its own. Liquidating plans are contemplated under the Bankruptcy Code. 11 U.S.C. Section 1123(b)(4). See also 11 U.S.C. Section 1123(a)(5) which requires that a plan provide adequate means for its implementation, thereby expressly permitting "the sale of all or any part of the property of the estate ... or the distribution of ... the estate among those having an interest in such property of the estate." The probability that a liquidating plan may be filed thus does not serve as a ground for conversion or dismissal because the submission of such a plan is proper under Chapter 11. *In the Matter of Denrose Diamond, supra* (motion to convert; plan had not been submitted), citing *In re L.N. Scott Co., Inc.,* 13 B.R. 387 (Bankr.E.D.Pa.1981); *In the Matter of W.J. Rewoldt Co.,* 22 B.R. 459, 462 (Bankr.E.D.Mi.1982) (if reorganization was a viable option when the debtor filed its bankruptcy petition, conversion should not be ordered when, even though reorganization is no longer a viable option, liquidation would proceed more expeditiously and less expensively under the control of the debtor). The factor of rehabilitation is thus under sound authorities, simply not relevant.

■ 2. Best Interest of Creditors and the Estate. In addition to the above independent ground for denying the instant motion, Movant has also not shown that it would be in the best interest of creditors and the estate to convert or dismiss the instant Chapter 11. Even if the only reason for the Chapter 11 in the instant case is to maximize the return to the secured creditor through the retention of the debtor-in-possession to collect and liquidate assets and to avoid pre-petition transfers of the debtor, the interests of the secured creditor are legitimate interests to be taken into account in deciding whether to convert or dismiss a Chapter 11 case. In determining whether to convert or dismiss a case under 11 U.S.C. Section 1112(b), the court must take into account the best interest of creditors and the estate. 11 U.S.C. Section 1112(b). Pursuant to 11 U.S.C. Sections 101(9) and 101(4)(A), entities holding secured claims are "creditors". It follows that the secured creditor's interests must be taken into account. See, e.g., *In re*

*Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984); *In re Justus Hospitality Properties, Ltd.*, 86 B.R. 261, 264–65 (Bankr.M.D.Fla.1988). In fact, there need not be any unsecured creditors in a bona fide reorganization, and thus the only creditor interests to be taken into account may sometimes be secured creditors. See *Matter of Gagel & Gagel*, 24 B.R. 671 (Bankr. S.D.Ohio 1982); *In re World of English, N. V.*, 16 B.R. 817; 821 (Bankr.N.D.Ga.1982) ("This Court does not believe that the lack of unsecured creditors is conclusive as to the existence of good faith"; court distinguished various cases stating need for unsecured creditor body to benefit from reorganization as those cases using bankruptcy solely to obtain the benefit of the automatic stay and forming a corporation solely for the purpose of shifting assets from one entity to a second entity to avoid the exercise by a secured creditor of its rights.); Cf. *In the Matter of Ladner*, 50 B.R. 85, 88 (Bankr.S.D.Miss.1985) (In a Chapter 11 case, the Code's protection "extends to secured as well as to unsecured creditors, and the Court must balance each of the various interests before it." Court confronted with issue of whether to enforce dragnet clause against the debtor). Pursuant to the above, it is in the interest of the secured creditor that the instant case not be dismissed. That interest is not detrimental to the interests of unsecured creditors, equity holders and the estate, as we have shown, and does support the present motion.

3. Sixth Circuit Authorities. Notwithstanding the contention of the U.S. Trustee to the contrary, denial of the present motion is consistent with the case law from the Sixth Circuit Court of Appeals on the subject of converting or dismissing a Chapter 11 petition. In *In the Matter of Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985), the debtor was a trust which operated a garage. Prior to bankruptcy, the debtor's garage was foreclosed on and after the expiration of the redemption period, the garage was sold. The trust then filed a Chapter 11 petition for the purpose of setting aside the foreclosure as a voidable transfer. Following a dismissal of its bankruptcy petition by the bankruptcy court, the trust appealed to the district court. The district court "upheld the dismissal on the ground that Chapter 11 was not intended to be available to entities that had neither assets nor an ongoing business to protect." *Id.* at 1137. The Sixth Circuit found that "dismissal of the Trust's Chapter 11 petition on the grounds stated by the District Court was proper." *Id.*

The instant case is clearly distinguishable, for even if there was no ongoing business to protect in Chapter 11, the debtor-in-possession has liquidated assets and realized recoveries of over $800,000.00 which will be used to reduce the secured debt to Northside. Additionally, legal proceedings are pending, seeking $70,000.00 allegedly garnished in violation of the automatic stay, $90,000.00 from the debtor-in-possession's former landlord and approximately $50,000.00 from creditors for pre-petition transfers. Comparable facts are simply not present in *Winshall Settlor's Trust.*

This case is also consistent with *In re Clawson Medical Rehabilitation and Pain Care Center, Inc.*, 815 F.2d 702 (6th Cir.1987). In this unpublished opinion, the Sixth Circuit held that "[w]hen a business ceases all of its operations either before filing under Chapter 11 or thereafter, any basis for projecting a successful reorganization is removed and Chapter 7 proceedings are more appropriate. It is emphasized that the debtor in this case was not seeking Chapter 11 liquidation, but Chapter 11 reorganization for a corporation which was engaged in no business enterprise." In the instant case, the debtor is seeking Chapter 11 liquidation and, thus, *Clawson* is inapposite.

■ 4. Remaining Causes of Action. The existence of claims against third parties is a factor in favor of denial of the motion. Once all of the assets of the debtor are liquidated, some causes of action may remain to be decided. At that time, it will not necessarily be in the best interest of the creditors and the estate to dismiss the case because doing so might result in a

windfall in favor of those who received preferential transfers or might encourage defendants to delay the adversary proceedings until the debtor-in-possession surrenders. See *In re Amarex, Inc.*, 74 B.R. 378, 381 (Bankr.W.D.Okl.1987), *aff'd*, 88 B.R. 362 (D.W.D.Okl.1988) (successors to reorganized firms able to pursue preference actions for the aforesaid reasons).

■ Additionally, that creditors have superior rights in bankruptcy pursuant to the avoiding powers is a valid consideration for not dismissing a case. *In re Warner*, 83 B.R. 807, 810 (Bankr.M.D.Fla.1988); *In re Ceiling Fan Distributor, Inc.*, 37 B.R. 701 (Bankr.M.D.La.1983) (Chapter 7 case involving Section 305 abstention); *In re Colonial Ford, Inc.*, 24 B.R. 1014, 1020 (Bankr.D.Utah 1982) (capacity for dealing with frauds and preferences relevant consideration in Section 305 motion to abstain in Chapter 11 case); *In re L.N. Scott Co., Inc.*, 13 B.R. 387, 388 (Bankr.E.D.Pa.1981) (dismissal of Chapter 11 case not proper where all of debtor's tangible assets had been sold and only remaining assets were four causes of action. "In the instant case, favorable results in the four (4) adversary proceedings in which the debtor-in-possession is the plaintiff would result in an influx of assets to the estate. The proceeds could then be distributed through a Chapter 11 plan.").

In light of all of the foregoing, the Motion to Dismiss or Convert is denied.

So Ordered.